1998 OK CR 62

**Julius Recardo YOUNG, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–95–1142.**

Court of Criminal Appeals of Oklahoma.

Nov. 6, 1998.

Rehearing Denied Feb. 19, 1999.

Jim Fransein, Stuart Southerland, Tulsa, Defense Counsel at trial.

Jay Holtzhouser, Ed Snow, Asst. District Attorneys, Tulsa, prosecutors at trial.

Paula J. Alfred, Assistant Public Defender, Tulsa, counsel on appeal.

W.A. Drew Edmondson, Atty. General of Oklahoma, William Humes, Asst. Attorney General, Oklahoma City, counsel on appeal.

## OPINION

LANE, J.:

¶1 Julius Recardo Young was tried by jury in Tulsa County District Court Case No. CF–94–937 and convicted of two counts of First Degree Murder and one count of First Degree Burglary. 21 O.S.1991, §§ 701.7, 1431. Following the second stage of trial the jury found three aggravating circumstances and set punishment at death for each of the murders and fifty years imprisonment for the burglary. Presiding Judge Clifford Hopper sentenced Young in accordance with this recommendation. Young is now before the Court on original appeal. We **AFFIRM** Judgment and Sentence.

## FACTS

¶2 Julius Recardo Young was convicted of murdering his girlfriend's daughter and six year old grandson. The murders occurred two days after his girlfriend, Joyslon Edwards, advised him she wanted to cool their relationship, and he would not get a key to her new apartment. She was not giving him a key, because she wanted her daughter and grandson to "feel safe" when they visited her. They did not like Young. Young had a key to the apartment Edwards had been sharing with her daughter, Joyland Morgan, and her grandson, Kewan Morgan. The day before the murders Edwards demanded the key from Young, but he did not return it.

¶3 Joyland and Kewan Morgan were beaten to death in their Tulsa apartment on October 1, 1993. Their wounds indicated the murder weapon was a blunt instrument similar to a baseball bat, but the murder weapon was never found. Ms. Morgan sustained defensive wounds to her hands and arms, and at least thirteen blows to her face and head. These blows broke her jaw, tore open her scalp, and fractured her skull. She was found slumped against a living room wall. Kewan Morgan died in his bed. He sustained massive head fractures caused by two separate blows.

¶ 4 Every night before she went to bed Joyland Morgan secured her front door with two locks and a security chain. The intruder opened both locks with a key and pushed through the security chain, breaking it. A piece of the broken chain was missing from the apartment.

¶ 5 No eye-witnesses were found. However, a downstairs neighbor was awakened at 3:40 a.m. by a single loud bump from Morgan's apartment. Joyslon Edwards testified she saw a baseball bat in Young's trunk the night before the murders, but the next day it was gone.

¶ 6 Young always drove Edwards to work and the day of the murders he arrived at 4:15 a.m., earlier than usual. Edwards asked him for change so she could use the vending machines at work. When Young pulled out the contents of his pocket, Edwards saw a piece of security chain similar to the one she had installed on her daughter's door. Later that day when Edwards learned of the murders, she reported this evidence to the police.

¶ 7 Young lived with his mother at the time, and the police obtained a warrant to search the mother's home. Edwards told them what Young had worn the previous evening. The police recovered the shoes described by Edwards and these bore a visible spot of blood. Young accompanied the police during the search. He volunteered the drop was fish blood. DNA testing revealed the drop was human blood consistent with that of Joyland and Kewan Morgan. The police also recovered a freshly laundered shirt which tested positive for blood when it was exposed to luminal.

### ISSUES ARISING IN THE FIRST STAGE OF TRIAL

#### A. Jury Selection

¶ 8 Young argues in his first proposition the trial judge subtly influenced the *voir dire* procedure in such a way that the resulting jury panel was guilt-prone and death-prone in violation of his Fourteenth Amendment right to due process. This argument is a variation of that rejected by *Lockhart v. McCree*, 476 U.S. 162, 173, 106 S.Ct. 1758, 1764, 90 L.Ed.2d 137 (1986). The Supreme Court held that even if a jury which has been "death qualified" is more guilt-prone than a jury which has not, the Constitution does not prohibit the States from "death qualifying" juries in capital cases. *Id.*

¶ 9 Oklahoma trial judges assume an active role in conducting *voir dire* to death qualify a jury in a capital case. The trial judge enjoys broad discretion in deciding which members of the venire possess actual bias and should be excused for cause. *Walker v. State,* 1994 OK CR 66, ¶ 12, 887 P.2d 301, 307, *cert. denied,* 521 U.S. 1125, 117 S.Ct. 2524, 138 L.Ed.2d 1024 (1997); *Mitchell v. State,* 1994 OK CR 70, ¶¶ 15–16, 884 P.2d 1186, 1195, *cert. denied,* 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995); *Dennis v. United States,* 339 U.S. 162, 168, 70 S.Ct. 519, 521, 94 L.Ed. 734 (1950). Actual bias is present when a juror's views "prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath." *Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).

¶ 10 Young argues questioning by the trial court amounted to "grilling" the jurors and "show[ing] disdain for fundamental precepts of a fair trial...." We reject this argument for it is not supported by the record. Neither the process of *voir dire,* nor the *voir dire* as conducted by J. Hopper "grilled" the jurors or showed disdain for due process. The trial judge appropriately plumbed the attitudes and beliefs of the venire panel. His questions yielded candid responses from venire members who freely exposed important information which allowed counsel for both sides to make intelligent selection choices. The trial judge focused on finding jurors who could follow and apply the law, as required by *Witt. Id.*

¶ 11 Young reads too much into *Morgan v. Illinois,* 504 U.S. 719, 728, 112 S.Ct. 2222, 2229, 119 L.Ed.2d 492 (1992) when he argues the trial judge tainted the jury panel by failing to ask life-qualifying questions. *Morgan* simply holds that a trial judge cannot prohibit life-qualifying questions upon counsel's request. *Id.* As is customary in Oklahoma, defense counsel and the prosecutor

also asked questions of the venire panel. At no time did Judge Hopper prohibit counsel from probing the attitudes of the venire panel on the subjects of mitigating evidence or the sentencing alternatives of life in prison with or without possibility of parole. The trial judge did not run afoul of *Morgan.*

¶ 12  Appellate counsel concedes the trial judge properly instructed the venire panel as to all the punishment options and the presumption of innocence, but complains the instructions came so late in the jury selection process that the trial judge had already predisposed the jury to a finding of guilt. This speculation is not sufficiently grounded in the facts to persuade us. The trial court's questions and statements were not improper. Young's argument that the standard instructions should have been given earlier in the *voir dire* process is not sufficient to bear the burden to prove this trial judge violated Young's right to due process by instructing the jury when he did.

¶ 13  In his second proposition Young argues the trial court erred by failing to dismiss Veniremen Hill and Wnuck for cause. Young removed them by peremptory challenge, and argues reversal is warranted because he was forced to keep other unacceptable veniremen when the trial court denied him additional peremptory challenges.

■■■ ¶ 14  We agree the trial court erred by failing to dismiss these two veniremen for cause. Veniremen who possess actual bias, that is they are unable to follow their instructions and their oaths, should be dismissed by the trial court for cause. *Witt,* 469 U.S. at 424, 105 S.Ct. at 852. Venireman Hill could not follow his oath because he could not presume the defendant innocent until proven guilty. When asked by the trial court, "If you hear evidence, can you keep an open mind and listen to the evidence and follow the law and reach a verdict in this case based on the law and the evidence and nothing else?", he replied, "I hope that I could, but I don't know, I mean, I think my mind would be harder to convince just because of where I am. Like I say I've tried to keep an open mind but that's just where it is." In spite of this clear expression of bias, the trial court denied defense counsel's request that

Hill be removed for cause. This is error under *Witt.*

■■ ¶ 15  Venireman Wnuk, who was moving to Houston soon and planned to take her son to college in California the next week stated, "I no longer have a vested interest in Tulsa or the State of Oklahoma.", and added she could pay attention to the trial for only five days. This venireman made clear she did not care to follow an oath, and in any case, would not for more than five days. The failure to remove this venireman is also error under *Witt.*

■■■ ¶ 16  Defense counsel cured the trial court's error by removing both of these venireman by peremptory challenge. *Ross v. Oklahoma,* 487 U.S. 81, 88, 108 S.Ct. 2273, 2278, 101 L.Ed.2d 80 (1988). He argues he was denied due process nevertheless, for as a result of curing the trial court's error, he ran out of peremptory challenges while objectionable veniremen remained. In such cases the burden falls to the defendant to request additional peremptory challenges and to create a record sufficient to prove prejudice if the request is denied. *Salazar v. State,* 1996 OK CR 25, ¶¶ 28–29, 919 P.2d 1120, 1128–29.

■■ ¶ 17  Defense counsel preserved the error for appellate review when he asked for five additional peremptory challenges after removing Hill and Wnuk. Proof of prejudice, however, requires more. *Id.; Spears v. State,* 1995 OK CR 36, ¶ 14, 900 P.2d 431, 438, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527. Counsel did not explain why any of the remaining veniremen were unacceptable, and the record reveals nothing to suggest any seated juror was unfit to serve. Young does not meet his burden to prove prejudice; therefore, under *Ross* the trial court's error is harmless.

### B.  Validity of the Search Warrant

¶ 18  When the Tulsa police conducted a warranted search of Young's residence, they recovered a shoe with a spot of blood consistent with that of the victims, and a freshly laundered shirt which tested positive for blood when subjected to luminol. In the third proposition of error Young challenges

the validity of the search warrant on two grounds: 1) it was not supported by probable cause; and 2) it was supported by two misleading statements.

¶ 19   Counsel preserved this issue for appellate review by challenging probable cause for the warrant at trial. Probable cause sufficient to support a search warrant is the existence of a substantial basis to believe the place to be searched contains evidence of wrongdoing. *Bryan v. State,* 1997 OK CR 15, ¶ 20, 935 P.2d 338, 353, *cert. denied,* 522 U.S. 957, 118 S.Ct. 383, 139 L.Ed.2d 299 (1997). The "totality of the circumstances" are examined on appeal to decide whether the magistrate's finding of probable cause was supported by a substantial factual basis. *Gregg v. State,* 1992 OK CR 82, ¶ 13, 844 P.2d 867, 874. If the magistrate's finding of probable cause is supported by the record, it will not be disturbed on appeal. *Id.*

¶ 20   The supporting affidavit for the search warrant asserted 1) Young wore a pink dress shirt, black slacks, and brown or black shoes with tassels the night before the murders; 2) Young had changed clothes at the home of his mother; 3) the address of the home of Young's mother; 4) a security chain was broken and missing from the victims' apartment door; 5) Joyslon Edwards saw Young remove a similar broken security chain from his pocket; and, 6) "several weeks ago" Joyland Morgan told Edwards that Young "had made uninvited sexual advances toward her and had attempted to seduce her." The affiant sought, and received, nighttime service based on the statement that Young could destroy evidence of the crime.

¶ 21   Young argues two of the affiant's statements are false and misleading. He asserts the attempted seduction occurred four years earlier, and that he could not possibly destroy evidence for he was in custody at the time the warrant was served. The first statement goes to probable cause, the second goes to the validity of the authorization for nighttime service. The State counters with a three part argument: 1) Young fails to prove the affiant knew the statements were false or misleading; 2) Young waived

the issue by failing to raise it at trial; and, 3) even without these statements the warrant was supported by probable cause.

¶ 22   An argument in support of a motion to suppress which is not raised at trial is waived. *See United States v. Restrepo–Rua,* 815 F.2d 1327, 1329 (9th Cir.1987). Young recognizes this procedural bar, and argues counsel's failure to raise the issue of false and misleading statements proves trial counsel was ineffective. We address this question under the familiar Strickland test: did counsel fall below professional standards by failing to challenge the search warrant on the basis of false and misleading statements; and, if so, would the outcome of trial have been different had counsel raised this challenge. *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

¶ 23   In order to obtain a hearing at trial on this issue, Young would have had to make a "substantial showing" that the false statement regarding the time of the alleged unwanted sexual advance: 1) was made knowingly and intentionally or with reckless disregard for the truth; 2) was included in the warrant affidavit; and, 3) the allegedly false statement is necessary to the finding of probable cause. *Franks v. Delaware,* 438 U.S. 154, 155–56, 98 S.Ct. 2674, 2676, 57 L.Ed.2d 667 (1978).

¶ 24   Young's bald allegation, unsupported by any facts, fails to meet the first threshold requirement for a *Franks* hearing. Also, the statement is not necessary to the finding of probable cause. Inasmuch as this challenge is wholly unsupported, counsel's failure to raise it at trial is not evidence of sub-standard performance.

¶ 25   Counsel's failure to challenge nighttime service likewise is not evidence of deficient performance. The search warrant was served at 8:15 p.m., a time which requires no special finding of necessity by the magistrate. 22 O.S.1991, § 1230; *State v. Stafford,* 1992 OK CR 47, ¶ 3, 845 P.2d 894, 895. Thus, this issue is moot. We find no evidence of ineffective assistance of counsel here.

¶ 26 Examining the totality of the circumstances, we find the magistrate's decision to issue the search warrant is supported by probable cause to believe evidence of wrongdoing would be found at the home of Young's mother. The broken chain connects Young to the crime, and the fact he changed clothes there indicates evidence of the crime would be found there as well. There is no error here.

### C. Admissibility of Polymerase Chain Reaction (PCR) DNA Evidence

¶ 27 Polymerase Chain Reaction (PCR) analysis, first reported in 1985, is a method of replicating small amounts of DNA. Its value lies in the fact it can be used to analyze smaller samples than the better known Restriction Fragment Length Polymorphism "RFLP" method. Its weakness lies in the fact that, unlike RFLP analysis, PCR-based DNA analysis is generally not used to establish a statistical "match" between a sample and an individual; but rather, is used as a technique to exclude certain individuals as possible contributors to a particular sample. *U.S. v. Hicks*, 103 F.3d 837, 845 (9th Cir. 1996), *cert. denied* 520 U.S. 1193, 117 S.Ct. 1483, 137 L.Ed.2d 694 (1997). The *Hicks* Court explained:

> Each individual has a particular "type" that appears following PCR testing, called an "HLA–DQ alpha genotype." . . . [T]here are only 21 possible types that can be found in humans. The frequency of occurrence for each PCR type varies throughout the human population. In this way, PCR testing can be compared to the more traditional methods of forensic testing, including the use of blood type evidence (under the ABO system) or hair sample evidence. Neither of the traditional methods singles out a particular individual as matching a particular sample, but both methods can exclude individuals as possible contributors if they are not within the blood type or hair sample type. The use of PCR typing to exclude individuals

as possible contributors to a particular DNA sample is strikingly similar. *Id.*

¶ 28 The admissibility of PCR-based DNA analysis in criminal trials is well established nation-wide[1], but at the time of Young's trial, admissibility had not been accepted by this Court. Young attacks admission of this evidence on two grounds in his eighth proposition of error: 1) the method does not satisfy the *Daubert* test; and, 2) the assumptions of population frequency used by the State's expert in this case are faulty.

¶ 29 The State introduced the evidence through the testimony of Dr. Harold Deadman of the Federal Bureau of Investigation. Prior to ad-mission of the evidence, the trial court held an *in camera* hearing to determine admissibility. Ultimately, the trial court admitted the evidence over defense objection.

¶ 30 The admission of scientific evidence in Oklahoma at the time of Young's trial was governed by the test articulated in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993). The *Daubert* test, adopted by this Court in *Taylor v. State*, 1995 OK CR 10, ¶¶ 18–21, 889 P.2d 319, 330, requires the trial court to consider four factors when determining admissibility of scientific evidence: 1) whether the scientific method at issue has been or can be tested; 2) whether the theory or technique has been subjected to peer review and publication; 3) the proffered technique's known or potential rate of error; and, 4) whether the new theory has gained general acceptance in the relevant scientific community. *Daubert*, 509 U.S at 593–94, 113 S.Ct. at 2796–97.

¶ 31 Dr. Deadman testified to each of the four *Daubert* factors: the PCR method has been subjected to validity studies; it is used widely by people performing forensic DNA studies; it has been the subject of some 250 published articles, most of which were in peer review journals; validation studies have been performed; and, two years of field use

---

1. The following twenty-seven states admit this evidence: Texas, Arizona, Maryland, California, Alabama, Missouri, Virginia, Tennessee, Illinois, Massachusetts, Louisiana, Wisconsin, Michigan, Kansas, Alaska, Florida, Washington, Indiana, Nebraska, Montana, Minnesota, New York, Oregon, Colorado, Ohio, West Virginia, and South Dakota.

and control studies have proven its accuracy. The defense presented nothing at this hearing. At the conclusion of the hearing the trial court determined the PCR-based DNA evidence was admissible.

¶ 32 This ruling, supported by solid evidence to satisfy each of the *Daubert/Taylor* factors, is correct. In 1994 this Court remarked, in dicta, the PCR test was "newer and less scientific and thus not as widely accepted in the scientific community as the RFLP method" of DNA analysis. *Taylor v. State,* 1995 OK CR 10, ¶ 24, n. 57, 889 P.2d at 333, n. 57. The ensuing four years have resulted in widespread development of this scientific method, and this Court recently held PCR-based DNA evidence satisfies the *Daubert/Taylor* test and is admissible. *Wood v. State,* 1998 OK CR 19, ¶ 40, 959 P.2d 1, 11. We note in passing that under the superceded *Frye* test, expert opinion based on scientific technique was inadmissible unless the technique was "generally accepted as reliable in the relevant scientific community." *Frye v. United States,* 54 App.D.C. 46, 47, 293 F. 1013, 1014 (1923). Had this stricter test for admissibility been in place at the time of trial, the question of admissibility might well have had a different outcome.

■ ¶ 33 Separate and distinct from the question of admissibility, Young also challenges assumptions made by Dr. Deadman for purposes of statistical analysis of the data. These assumptions rely on population data bases which have been compiled for particular genetic markers. This challenge goes to the weight of the evidence, not its admissibility. As such, it may provide fertile ground for effective cross-examination. The PCR-based DNA evidence was properly admitted at trial.

#### D. Instruction on the Elements of First Degree Burglary

¶ 34 Young relies on *Hendricks v. State,* 1985 OK CR 39, ¶ 5, 698 P.2d 477, 480, to argue in his thirteenth proposition the trial court misinstructed on the elements of the crime of burglary. *Hendricks,* based on the unique fact that the accused entered a dwelling through an open door, was silently overruled by *Newsom v. State,* 1988 OK CR 229,

¶¶ 17–20, 763 P.2d 135, 140, and overruled expressly by *Cleary v. State,* 1997 OK CR 35, ¶ 27, 942 P.2d 736, 745, *cert. denied,* 523 U.S. 1079, 118 S.Ct. 1528, 140 L.Ed.2d 679 (1998). We have examined the instructions given by the trial court in this case regarding the elements of first degree burglary and find them to be correct.

### ISSUES FROM THE SECOND STAGE OF TRIAL

#### A. Waiver of Mitigation Evidence

¶ 35 Young listed seven mitigation witnesses, but at trial decided not to call any of them to testify. In lieu of calling witnesses, defense counsel negotiated the following stipulation:

> Defendant is 42 years of age and he has been a life-long resident of Tulsa; Defendant has family, relatives that love him; Defendant has been a minister in a church for 11 years; The defendant is a veteran, having served in the U.S. Army and was honorably discharged.

■ ¶ 36 Young argues in the fourth proposition of error that his *waiver* of mitigation evidence was not done in accordance with the guidelines set forth in *Wallace v. State,* 1995 OK CR 19, ¶ 2, 893 P.2d 504, 508, *cert. denied,* 516 U.S. 888, 116 S.Ct. 232, 133 L.Ed.2d 160. *Wallace* does not apply, since Young did not *waive* mitigation, but opted to introduce it through stipulation. As the State cogently argues, the State had given notice of damaging rebuttal evidence, and Young's stipulation strategically avoided this risk as well as the risk of cross-examination.

#### B. Victim Impact Evidence

¶ 37 Young raises three challenges to the introduction of victim impact evidence in his sixth proposition of error: 1) the State failed to comply with statutory notice; 2) the content of the statement exceeded legal boundaries; and, 3) the trial court failed to issue a limiting instruction to the jury as to the proper use of the statement.

■ ¶ 38 Trial counsel objected to the introduction of the statement on the grounds it was unconstitutional, more prejudicial than

probative and a denial of due process. Counsel did not challenge the timeliness, or adequacy of the State's notice. Failure to object on these grounds waives them on appeal. *Walker v. State*, 1994 OK CR 66, ¶ 53, 887 P.2d 301, 316–17, *cert. denied*, 516 U.S. 859, 116 S.Ct. 166, 133 L.Ed.2d 108 (1995).

¶ 39 Title 21 O.S.Supp.1995, § 701.10(C) provides the State may present evidence "about the victim and about the impact of the murder on the family of the victim." This evidence is subject to the limitations imposed by the Oklahoma Evidence Code as well as the state and federal constitutions. *Toles v. State*, 1997 OK CR 45, ¶ 38, 947 P.2d 180, 189, *cert. denied*, 524 U.S. 958, 118 S.Ct. 2380, 141 L.Ed.2d 746 (1998). Young argues the statement in his case went beyond these parameters. We have examined the victim impact statement delivered at Young's trial and find it to be squarely within the confines articulated by this Court and the Oklahoma Legislature. The statement explained succinctly the relationships enjoyed by family members with the victims. The statement focused on the effect of the murders on the family of the victims. This is permissible under § 701.10(C).

¶ 40 Young objects to that part of the statement which included the fact an aunt of the deceased, upon hearing of the murders, suffered a heart attack and died. He argues a causal connection was not proven. This argument is appropriate for trial, not appeal. The presenter of a victim impact statement is subject to cross-examination, and this issue properly could have been plumbed at trial. *Toles*, 1997 OK CR 45, ¶ 39, 947 P.2d at 189.

¶ 41 Young continues his challenge of the victim impact evidence by arguing the lack of a limiting instruction on its use requires reversal. Three months after Young's trial, this Court handed down *Cargle v. State*, 1995 OK CR 77, ¶¶ 75–77, 909 P.2d 806, 828–29, *cert. denied*, 519 U.S. 831, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), which set forth a victim-impact limiting instruction to be used prospectively.[2] Inasmuch as the Court found the instruction to be a factor in assuring the jury's verdict was a "reasoned moral response based on reliable evidence," we examine this issue further to determine whether the lack of an instruction in this case led to something other than a "reasoned moral response."

¶ 42 First, we note the jury instructions regarding the definition, proof and use of the aggravating circumstances were thorough and correct. The content of the victim impact statement was properly confined to the guidelines set forth in Title 21 O.S. Supp. 1995, § 701.10(C). It was not unduly emotional. The statement simply gave a brief glimpse into the lives of the victims and their relationship with their immediate family. Under these circumstances, where both the use of the evidence in aggravation and the content of the victim impact statement were properly limited, we find beyond a reason-

2. The promulgated instruction is as follows:
The prosecution has introduced what is known as victim impact evidence. This evidence has been introduced to show the financial, emotional, psychological, or physical effects of the victim's death on the members of the victim's immediate family. It is intended to remind you as the sentencer that just as the defendant should be considered as an individual, so too the victim is an individual whose death may represent a unique loss to society and the family. This evidence is simply another method of informing you about the specific harm caused by the crime in question. You may consider this evidence in determining an appropriate punishment. However, your consideration must be limited to a moral inquiry into the culpability of the defendant, not an emotional response to the evidence.
As it relates to the death penalty: Victim impact evidence is not the same as an aggravating circumstance. Proof of an adverse impact on the victim's family is not proof of an aggravating circumstance. Introduction of this victim impact evidence in no way relieves the State of its burden to prove beyond a reasonable doubt at least one aggravating circumstance which has been alleged. You may consider this victim impact evidence in determining the appropriateness of the death penalty only if you first find that the existence of one or more aggravating circumstance has been proven beyond a reasonable doubt by evidence independent from the victim impact evidence, and find that the aggravating circumstance(s) found outweigh the finding of one or more mitigating circumstances.
As it relates to the other sentencing options: You may consider this victim impact evidence in determining the appropriate punishment as warranted under the law and facts in the case.

able doubt there is no possibility the victim impact evidence was misused in aggravation by the jury. The lack of instruction as to the use of victim impact evidence is harmless in this case. *See Toles,* 1997 OK CR 45, ¶¶ 36–41, 947 P.2d at 189–92.

## C. Impeachment of Defense Witness

■ ¶ 43 In his sixteenth proposition Young argues the trial court erred in allowing the prosecutor to introduce extrinsic evidence to impeach statements made by Young's mother, Alene Young, regarding her opinion of the victim and her family. Mrs. Young, who was called by the defense, stated in cross-examination she thought the victim's mother was "a nice girl." She denied she told the police she tried to get her son to stay away from her and the victim because they were "trash." Following this testimony the State called Detective Griggs who testified Mrs. Young had described Joyslon Edwards and her family as "trash" and she didn't want her son to have anything to do with them.

¶ 44 Appellant relies on the Oklahoma Evidence Code to argue extrinsic proof of a collateral matter is not admissible. 12 O.S. 1991, § 2608(B). Detective Griggs' testimony went to the issue of bias of this witness, an issue which is never collateral. Therefore, § 2608(B) does not apply here. *Fisher v. State,* 1988 OK CR 189, ¶ 6, 761 P.2d 900, 901; *See also Beck v. State,* 1991 OK CR 126, ¶ 12, 824 P.2d 385, 388 (bias never collateral).

## D. Lack of Notice of Aggravating Factor

¶ 45 The State sought the death sentence for each of the two murder counts in this case. As required by 21 O.S. Supp.1992, § 701.10(C), the State filed a "Notice of Evidence in Aggravation of Punishment" which set forth which aggravating circumstances the State would attempt to prove in support of each death sentence. The State is limited by its notice, for the only evidence admissible in aggravation is that which the State has "made known to the defendant prior to his trial...." Id.

¶ 46 The Notice stated the State would present evidence in support of four aggravating circumstances. Two of these applied to both counts, one applied only to Count I, and one applied only to Count II. Without designating a single count, the State advised Young it would seek to prove he created a great risk of death to more than one person and was a continuing threat to society. In support of the death sentence for Count I, the State announced it would present evidence the killing of Joyland Morgan was heinous, atrocious or cruel. In support of the death sentence for Count II, the State announced it would present evidence Kewan Morgan was killed to avoid arrest or prosecution.

■ ¶ 47 At trial the prosecutor ignored this self-imposed limitation and argued each aggravating circumstance as to each murder count. The trial court submitted a verdict form to the jury listing all four aggravating circumstances without assigning them to the proper Counts. The defense did not object. The jury returned a verdict finding three aggravating circumstances: 1) that the murder was especially heinous, atrocious or cruel; 2) great risk of death to more than one person; and, 3) continuing threat. The jury rejected the aggravator, "to avoid arrest or prosecution." This verdict form is subject to only one reasonable interpretation: the jury found these three aggravating circumstances for each murder Count. Inasmuch as defense counsel did not object to the verdict form, or the prosecutors argument, we review for plain error only. Plain error is that which results in a miscarriage of justice or which denies the defendant a statutory or constitutional right. *Ashinsky v. State,* 1989 OK CR 59, ¶ 20, 780 P.2d 201, 207; *Fisher v. State,* 1987 OK CR 85, ¶ 10, 736 P.2d 1003, 1008, *cert. denied,* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988).

■ ¶ 48 The election of aggravating circumstances to charge in the Bill of Particulars is within the discretion of the State which must bear the burden to prove them beyond a reasonable doubt. *Spears v. State,* 1995 OK CR 36, ¶ 71, 900 P.2d 431, 447, *cert. denied,* 516 U.S. 1031, 116 S.Ct. 678, 133 L.Ed.2d 527 (1995), *Perry v. State,* 1995 OK CR 20, ¶ 53, 893 P.2d 521, 533. Notice by the prosecution to the defense of the evi-

dence to be introduced in support of the aggravating circumstances is required by statute. 21 O.S.1991, § 701.10(C); *Walker*, 1994 OK CR 66, ¶ 53, 887 P.2d at 316–17.

¶ 49 In the present case the State was permitted to charge and present evidence to support the "heinous, atrocious or cruel" aggravating circumstance as to Count II, even though no notice had been given to the defense. This is plain error, for it denied Young a statutory right. To remedy this error, we strike the "heinous, atrocious or cruel" aggravating circumstance from Count II. We reweigh the aggravating and mitigating evidence as to this Count below.

### E. Continuing Threat

¶ 50 In the ninth proposition of error Young challenges the continuing threat aggravator on the grounds it is unconstitutionally vague, and it was supported by insufficient evidence. The State responds only to the second prong of the argument, stating the issue is well-settled in this jurisdiction that this aggravator, properly limited by instruction, is not unconstitutionally vague. We agree. *See Malone v. State*, 1994 OK CR 43, ¶¶ 6–40, 876 P.2d 707, 717–18.

¶ 51 The factual challenge is the more interesting issue in this case. In *Perry*, 1995 OK CR 20, ¶ 61, 893 P.2d at 536, this Court held that in order to prove continuing threat the State must present evidence concerning prior convictions or unadjudicated crimes to show a pattern of criminal conduct that will likely continue in the future.

¶ 52 In this case the only evidence introduced of past bad acts was five counts of uttering a forged instrument, and the fact Young became "snappy" and had an "attitude" when he drank. This evidence is not sufficient to support the jury's finding of continuing threat. We must strike this invalid aggravator from both Count I, the murder of Joyland Morgan, and Count II, the murder of Kewan Morgan.

### F. Reweighing Valid Aggravating Factors and Mitigating Evidence

¶ 53 This Court has the inherent power to reweigh aggravating circumstances against mitigating evidence when one or more aggravating circumstances are found to be invalid on appeal, and one or more valid aggravating circumstances remain. *McGregor v. State*, 1994 OK CR 71, ¶¶ 47–48, 885 P.2d 1366, 1385–86, *cert. denied*, 516 U.S. 827, 116 S.Ct. 95, 133 L.Ed.2d 50 (1995). After striking the invalid aggravators, we find the death sentence in Count I is supported by two aggravating circumstances: 1) the defendant created a great risk of death to more than one person; and, 2) the murder was especially heinous, atrocious or cruel. The death sentence in Count II is supported by one aggravating circumstance: the defendant created a great risk of death to more than one person. We now reweigh these aggravating circumstances against the mitigation evidence to determine whether the death sentences are supported for each Count.

¶ 54 The jury was specifically instructed to consider whether the following mitigating evidence applied to the facts of the case: Young was 42 years of age; Young had been a lifelong resident of Tulsa; Young had a family who loved him; Young had been a minister in the AME church for 11 years; and Young was a veteran, having served in the U.S. Army and was honorably discharged. See Instruction No. 9.

¶ 55 The evidence presented at trial indicated that the day before the murders Joyslon Edwards told Young he would have to give back the key to her old apartment, the apartment where her daughter and grandson lived, and that he would not get a key to her new apartment, because she wanted her daughter and grandson to "feel safe." At approximately 3:30 a.m. the next day, Young went to the old apartment, let himself in with the key, pushed through the security chain, and beat Joyland and Kewan Morgan to death with an object similar to a baseball bat. Joyland struggled, receiving defense wounds to her finger, hands, and elbows; and, died in the living room after receiving at least thirteen blows to the face and head. Kewan Morgan's head was smashed as he lay in his bed.

¶ 56 The jury was properly instructed that it must find Joyland Morgan's death was preceded by torture or serious physical abuse in order to find the "especially heinous atrocious or cruel" aggravator. The brutal injuries Joyland Morgan suffered prior to her death amply support the finding of serious physical abuse, and the aggravator itself.

¶ 57 Inasmuch as the Appellant killed two people in close proximity of time, place, and intent, the facts support the jury's finding of this aggravating circumstance as to both murders. *See Snow v. State*, 1994 OK CR 39, ¶ 24, 876 P.2d 291, 297, *cert. denied*, 513 U.S. 1179, 115 S.Ct. 1165, 130 L.Ed.2d 1120 (1995).

¶ 58 The murders in this case are exceptionally brutal. Evidence supporting the valid aggravating circumstances is strong. The mitigating evidence is uncontroverted, though weak. Upon reweighing the valid aggravating factors against the mitigating evidence, we find the death penalty is supported as to both Counts. Had the jury considered only the valid aggravators, we find beyond a reasonable doubt the jury would have sentenced Young to death in both Counts.

### G. Constitutionality of "Heinous, Atrocious or Cruel" and "Great Risk of Death to More than One Person"

¶ 59 In his tenth proposition of error the Appellant argues the aggravating circumstances, "heinous, atrocious, or cruel" and "great risk of death to more than one person" are unconstitutionally vague. This boilerplate argument, which offers nothing new, has been settled in this jurisdiction in favor of constitutionality. *Al–Mosawi v. State*, 1996 OK CR 59, ¶ 67, 929 P.2d 270, 285, *cert. denied*, 522 U.S. 852, 118 S.Ct. 145, 139 L.Ed.2d 92 (1997) (great risk of death to more than one person); *Powell v. State*, 1995 OK CR 37, ¶ 70, 906 P.2d 765, 782, *cert. denied*, 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996) (heinous, atrocious or cruel).

### H. Jury Instruction Regarding Mitigating Evidence

¶ 60 Young argues in his eleventh proposition of error the jury instructions "present a substantial probability" the jurors thought their findings on mitigation evidence had to be unanimous. Such a result would violate the holding of *Mills v. Maryland*, 486 U.S. 367, 384, 108 S.Ct. 1860, 1870, 100 L.Ed.2d 384 (1988). The instructions to the jury on mitigation evidence and the weighing of mitigation evidence and aggravating circumstances are taken *verbatim* from the Oklahoma Uniform Jury Instructions–Criminal in force at the time of trial. This issue has been resolved in favor of the correctness of the uniform jury instructions. *Stiles v. State*, 1992 OK CR 23, ¶¶ 57–58, 829 P.2d 984, 997.

¶ 61 The twelfth proposition of error raises a challenge to the so-called "anti-sympathy" instruction. The trial court delivered the standard uniform instruction OUJI–CR 907 advising the jury it should not let "sympathy, sentiment or prejudice enter into your deliberations, but should discharge your duties as jurors impartially, conscientiously, and faithfully, under your oaths, and return such verdict as the evidence warrants when measured by these instructions." Young argues this instruction allowed the jury to ignore mitigating evidence. This argument is consistently rejected, and we find no reason to revisit it. *Al–Mosawi*, 1996 OK CR 59 at ¶ 79, 929 P.2d at 287.

¶ 62 With refreshing candor Young concedes in his eighteenth proposition of error the contained arguments have been settled against him, but he begs the Court's indulgence as he preserves the issues for federal review. The first challenges the weighing instruction informing the jury it was authorized to impose a sentence of death if the aggravating circumstance(s) found beyond a reasonable doubt outweighed the mitigating evidence. This is, as Appellant concedes, a correct instruction. *Romano v. State*, 1993 OK CR 8, ¶¶ 108–109, 847 P.2d 368, 392, *cert. denied*, 510 U.S. 943, 114 S.Ct. 380, 126 L.Ed.2d 330 (1993).

¶ 63 The second argument challenges this Court's holding that the trial court has no

duty to instruct the jury it may return a life sentence regardless of its findings on the aggravating circumstances. We have settled this issue, and find no reason to revisit it. *Harjo v. State*, 1994 OK CR 47, ¶ 77, 882 P.2d 1067, 1081, *cert. denied*, 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995).

¶ 64    In his nineteenth proposition of error, Young argues the jurors were misinstructed as to the process for weighing evidence in mitigation and aggravation. He argues the jury was not advised it was to weigh all of the mitigating evidence against each individual aggravating factor, and not all of the proven aggravating factors taken as a whole. This issue has been thoroughly considered on a number of occasions and denied. *Duckett v. State*, 1995 OK CR 61, ¶¶ 64–65, 919 P.2d 7, 22.

### I.    State's Burden to Prove Aggravating Circumstances

¶ 65    The trial court instructed the jury by Instructions No. 5, No. 7, No. 10, and No. 11 that the State had the burden to prove an aggravating circumstance beyond a reasonable doubt. In his seventeenth proposition of error Young argues the Court misinstructed on the State's burden of proof by saying the State had to prove the "material allegations" in the Bill of Particulars. The assertion this alleged error was "not corrected in any other second-stage instructions" is not supported by the record. The aggravating circumstances alleged by the State as well as the correct burden of proof was set forth thoroughly by the trial court. Not unlike the wicked step-sister's foot which simply could not be pushed into Cinderella's glass slipper, the instructions at hand can not be reshaped into a *Flores* issue. *See Flores v. State*, 1995 OK CR 9, ¶¶ 14–16, 896 P.2d 558, 563.

### PROSECUTORIAL MISCONDUCT

¶ 66    We have examined each of the alleged instances of prosecutorial misconduct in their trial context. We find none of the statements rise to the level found to be error in the cases cited, and thus none warrant relief.

### INEFFECTIVE ASSISTANCE OF COUNSEL

¶ 67    Young raises five allegations of ineffective assistance by his trial counsel in the fifth proposition of error. The allegations address: 1) failure to request a *Franks*[3] hearing on the legality of the search; 2) failure to life-qualify the jury and challenge for cause jurors who could not give Young a fair trial; 3) failure to present a consistent, believable defense; 4) failure to investigate mitigation; and, 5) failure to object to erroneous instructions and inadmissible evidence in the penalty phase of trial.

¶ 68    In order to prove ineffectiveness of counsel, the Appellant must show both a substandard performance and a reasonable probability that but for counsel's unprofessional errors the result of the proceeding would have been different. *Strickland v.Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). A "reasonable probability" is that sufficient to undermine confidence in the outcome of the proceeding. *Id.* at 686, 104 S.Ct. at 2064.

¶ 69    We addressed the *Franks* issue in our analysis of the validity of the search warrant and found the failure to demand a *Franks* hearing was not error.

¶ 70    Young's next challenge to counsel's effectiveness concerns the failure to challenge certain members of the venire panel for cause. As we have recognized, great deference must be given to trial counsel's jury selection decisions, for the cold record communicates only a small percentage of the information about the venire members available to counsel. An appellate court does not see the venire panel; it does not hear the tone of voice used by members of the panel to respond to questions. We find no compelling evidence in the record, and nothing compelling in the Appellant's argument on which to base a finding that any of the jurors ultimately sitting on this case were unqualified to serve. As we discussed above, there is no error here.

---

3. *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct.    2674, 57 L.Ed.2d 667 (1978).

¶ 71  When counsel requested additional peremptory challenges following the trial court's failure to remove two venire members for cause, he did not state which members of the panel he would remove if he had the additional challenges.  As a result, he did not preserve an issue for appellate review.  We now consider the failure to preserve the issue in the context of ineffective assistance of counsel.

¶ 72  While we understand zealous appellate counsel will speculate about errors possibly hidden in a silent record, relief on appeal requires more.  Trial counsel saw the pool from which any excused venire member would be replaced and had the opportunity to evaluate the people before him.  Given the fact we must accord trial counsel great deference when evaluating trial decisions, the burden to prove error is heavy indeed.  The record before us contains no evidence to suggest either that a sitting juror was unfit, or that the result of trial would have been different had additional peremptory challenges been granted and exercised.  Young does not carry his burden to show ineffectiveness here.

¶ 73  Counsel did not ask the venire panel probing questions about mitigation evidence, or other sentencing options besides death.  Young argues this is evidence of deficient performance.  We disagree.  While counsel may not be barred from asking these questions, we find nothing requiring them, and the briefs on appeal direct us to nothing requiring this of counsel.  The issues of mitigation evidence and the punishment options of life and life without parole were properly before the jury through correct instruction by the trial court.

¶ 74  As his fourth allegation of ineffective assistance of counsel, Young argues trial counsel failed to investigate mitigating evidence.  This issue is not supported by the record.  The record indicates counsel was prepared to call seven witnesses in mitigation.

¶ 75  Young's argument that the exposition of inconsistent facts at trial is evidence of ineffectiveness belies the paucity of facts available to develop an effective defense.  Trial counsel used the facts to try to create reasonable doubt in the minds of the jurors.  We believe the inconsistencies result from the facts of the case and reasonable trial strategy.  Though the strategy ultimately was unsuccessful, we do not find that by developing what facts he could to controvert strong evidence against his client counsel was ineffective.

## CUMULATIVE ERROR

¶ 76  Several trial errors occurred in this case.  We have found each to be harmless individually.  In the fourteenth proposition of error Young argues that these errors in *aggregate* warrant relief.

¶ 77  The errors identified at trial are these: the trial court failed to remove two venire members for cause, and trial counsel failed to preserve this issue for appellate review.  Upon review in the sole context of ineffective assistance of counsel, we found the error did not rise to the level of ineffective assistance.  This is so because the jurors seated were not shown to be unfit for service.

¶ 78  Two misleading statements were contained in the affidavit supporting the police request for a search warrant.  One statement went to probable cause, one supported the request for nighttime service.  We found counsel's failure to request a *Franks* hearing harmless, for sufficient evidence of probable cause was present without the misleading statement, and the warrant was served within the statutory time frame not requiring exigent circumstances.

¶ 79  The trial court did not provide the jury with a proper form for finding aggravating circumstances as to each count.  As a result the jury returned one form designating three aggravating circumstances.  We struck the "continuing threat" aggravating circumstance from both Counts due to insufficient evidence, and the "heinous, atrocious or cruel" aggravator from Count II because the State did not give the defendant notice it would attempt to prove it as to this Count.  Upon reweighing the evidence in mitigation against the valid aggravating circumstances,

we found the sentences of death factually supported beyond a reasonable doubt.

¶ 80 The trial court did not give an instruction to the jury limiting its use of the victim impact statement. This error was found to be harmless.

¶ 81 The only errors in this case which are subject to a possible synergistic effect are the elimination of the aggravating factors, and the lack of a limiting instruction on the use of the victim impact evidence. *See* n. 1, above. Given the content of the victim impact statement, we find beyond a reasonable there is no possibility it was misused as evidence in aggravation to the Appellant's detriment. When they are considered together, these trial errors gain no weight.

## MANDATORY SENTENCE REVIEW

■ ¶ 82 Julius Recardo Young received two death sentences, one for the first degree murder of Joyland Morgan (Count I), and the other for the first degree murder of Kewan Morgan (Count II). The Oklahoma Legislature has mandated a review by this Court of every death sentence to ensure it is not imposed under impermissible conditions of passion, prejudice, or any other arbitrary factor, and to ensure each supporting aggravating circumstance is supported by the evidence. 21 O.S.1991, § 701.13(C). We do so now.

¶ 83 he jury found three aggravating circumstances supported each death sentence. In the course of deciding this case we have invalidated the "continuing threat" aggravating circumstance as to both Counts for insufficient evidence, and the "especially heinous, atrocious or cruel" aggravating circumstance as to Count II, the murder of Kewan Morgan, because the State did not give the defendant notice it would seek to prove this aggravator for Count II. The remaining aggravating circumstances supporting the death sentence for the murder of Joyland Morgan (Count I) are "great risk of death to more than one person", and that "the murder was especially heinous, atrocious or cruel." The sole aggravating circumstance remaining in support of the death·penalty for the murder of Kewan

Morgan is that the Appellant created a great risk of death to more than one person.

¶ 84 Each of these aggravating circumstances is proven beyond a reasonable doubt. Two people were killed in close proximity of time, place, and intent, thus the "great risk of death to more than one person" aggravator is proven as to each Count. The aggravating circumstance that the murder was especially heinous, atrocious or cruel requires proof beyond a reasonable doubt that the death was preceded by torture or serious abuse, and that the victim suffered prior to death. *Smallwood v. State,* 1995 OK CR 60, ¶ 66, 907 P.2d 217, 234, *cert. denied,* 519 U.S. 980, 117 S.Ct. 431, 136 L.Ed.2d 330 (1996); *Revilla v. State,* 1994 OK CR 24, ¶ 43, 877 P.2d 1143, 1155, *cert. denied,* 513 U.S. 1096, 115 S.Ct. 764, 130 L.Ed.2d 661 (1995); *Stouffer v. State,* 1987 OK CR 166, ¶ 6, 742 P.2d 562, 563, *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). Serious physical abuse is proven by the fact Joyland Morgan suffered fractures to her finger, hand and elbow as she sought to defend herself from the killing blows. These wounds also prove beyond a reasonable doubt Morgan was conscious and was aware of the violent attack prior to the blows which killed her.

¶ 85 When we examine the trial for any infection of passion, prejudice, or other arbitrary factor, we find none. We conclude the sentences of death imposed in this case are factually supported, and not the product of passion, prejudice or any other arbitrary factor.

## DECISION

¶ 86 The Judgment and Sentence is **AFFIRMED.**

CHAPEL, P.J., STRUBHAR, V.P.J., and JOHNSON, J., concur.

LUMPKIN, J., concurs in results.

LUMPKIN, Judge, concurs in results.

¶ 1 I concur in the decision to affirm the judgment and sentence in this case but write separately to address the following issues.

¶2 In Proposition II, the opinion finds error in the trial court's failure to remove Veniremen Hill and Wunck for cause. Reading Venireman Hill's answers in context of his entire *voir dire*, it appears he was trying to resolve the presumption of innocence in his own mind. At no time did he say that he would not or could not follow the law, the instructions or his oath as a juror. The record in this case supports the trial judge's impression that the prospective juror would be impartial. *Spears v. State*, 900 P.2d 431, 437 (Okl.Cr.1995).

¶3 Ms. Wunck's only ambivalence to serving was that she had other things to do and if the trial lasted more than 5 days, it would be inconvenient. In response to defense counsel's request for Wunck to be removed for cause, the trial judge said he would not remove her for cause because if he did he would have to excuse the entire panel for inconvenience. Wunck's answers were not sufficient to warrant her removal for cause.

¶4 Further, Appellant failed to make a record of the specific jurors he would have excused if he had those 2 peremptoriness he had used on Hill and Wunck. For that reason, Appellant has failed to show any prejudice as a result of the trial court's actions.

¶5 The opinion finds error in the State's failure to give notice of the "especially heinous, atrocious or cruel" aggravator as it pertained to Count II. This is an issue raised *sua sponte* by this Court. In Proposition VII of his brief, Appellant argues that he was deprived of a jury finding as to the aggravating circumstances for the two separate victims. In support of his argument he mentions that the State's notice in support of the aggravating circumstances indicated that the "especially heinous, atrocious or cruel" aggravator was alleged only as to Count I and not Count II. However, the crux of Appellant's argument goes to faulty jury instructions for failing to instruct the jury that their determination of guilt as to the aggravators had to be separate and distinct for each count of murder. Addressing the allegation of error raised by Appellant, there is no error as there were no objections to the instructions or the verdict forms, and the

instructions adequately informed the jury they must consider the existence of the aggravating circumstances as to each separate count of first degree murder. Further, evidence of the manner and method of the killing was sufficient to support the "especially heinous, atrocious or cruel" aggravator in Count II, and Appellant had notice of the supporting evidence as it was essentially the testimony of the medical examiner. Therefore, I find no error in Appellant's Proposition VII.

¶6 In finding the evidence insufficient to support the "continuing threat" aggravator the opinion relies solely only the "pattern of criminal conduct" standard and fails to acknowledge that the murder for which the defendant was convicted can be considered as supporting evidence for the aggravator. *Malone v. State*, 876 P.2d 707, 718 (Okl.Cr.1994). Here there is evidence Appellant sought out his victims in a calculated plan to kill and then brutally beat them to death. This is sufficient evidence to uphold the aggravator.

¶7 In reviewing claims of ineffective assistance of counsel, the *Strickland v. Washington* standard has been further explained by *Lockhart v. Fretwell*, 506 U.S. 364, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). Reviewing Appellant's claim in that light, the record is void of any evidence the trial was rendered unfair or the verdict rendered suspect or unreliable.