2001 OK CR 11

**Charles Frederick WARNER, Appellant,**

v.

**STATE of Oklahoma, Appellee.**

**No. F–99–385.**

Court of Criminal Appeals of Oklahoma.

April 20, 2001.

Lumpkin, P.J., filed opinion concurring in result.

Lile, J., filed opinion concurring in result in part and dissenting in part.

**43.** Title 75 O.S.1991 § 322.

Steve Huddleston, Phil Winters, Robert Carpenter, Oklahoma City, OK, for Appellant at trial.

Lou Keel, David Prater, Oklahoma City, OK, for the State at trial.

Lee Ann Jones Peters, Timothy J. Gifford, Oklahoma Indigent Defense System, Norman, OK, for Appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Robert Whittaker, Assistant Attorney General, Oklahoma City, OK, for Appellee on appeal.

## *OPINION*

STRUBHAR, Judge:

¶1 Appellant, Charles Frederick Warner, was convicted of First Degree Murder and First Degree Rape, in the District Court of Oklahoma County, Case No. CF–97–5249, after a jury trial held before the Honorable Virgil C. Black. As to the count of First Degree Murder, the State filed a Bill of Particulars alleging two aggravating circumstances: 1) that the murder was especially heinous, atrocious or cruel;[1] and 2) the existence of a probability that Appellant would commit acts of violence that would constitute a continuing threat to society.[2] The jury found the existence of each of the alleged aggravating circumstances and assessed punishment at death on the murder conviction. The jury assessed punishment at nine hundred ninety-nine years imprisonment on the rape conviction. The trial court sentenced Appellant accordingly. From this Judgment and Sentence Appellant has perfected his appeal.[3]

## FACTS

¶2 In August of 1997, Shonda Waller and her eleven month-old daughter, Adriana Waller, lived in Oklahoma City with Appellant and his three children, seven year old Charvon, five year old Vonita and two year old Dasia. At about 7:30 a.m. on August 22, Appellant left the house to go pay a traffic ticket. When Shonda woke up at 8:00 a.m., she stayed in bed and played with Adriana for a while. Adriana was her normal, playful self and did not seem to be experiencing any type of discomfort. When Shonda changed Adriana's diaper that morning, she did not notice anything wrong with Adriana. After Shonda got up, she made sandwiches for the kids and for Appellant when he came home. Shonda and Appellant had planned to go grocery shopping with all of the children that morning but Appellant suggested that she go by herself and leave the children with him at the house. Shonda left to go shopping around noon. She arrived back at the house with the groceries at around 2:30 p.m. She looked in on Adriana and saw her laying on the bed. A short time later Shonda told Appellant that she wanted to go pay to have the telephone connected. When Appellant went to get Adriana, he brought her out of the bedroom and said that she wasn't breathing. Shonda grabbed Adriana and asked Appellant to drive them to the hospital. On the way to the hospital Shonda performed CPR on her daughter.

¶3 When Shonda carried Adriana into the emergency room of Mercy Health Center in Oklahoma City, Adriana appeared lifeless. Resuscitation efforts by medical personnel failed and she was pronounced dead approximately forty minutes later. Emergency room nurses proceeded to clean the baby.

---

1. 21 O.S.1991, § 701.12(4).

2. 21 O.S.1991, § 701.12(7).

3. Appellant's Petition–in–Error was filed in this Court on September 10, 1999. His Brief–in–Chief was filed on July 5, 2000, and the State's Response Brief was filed on November 9, 2000. Appellant's Reply Brief was filed on November 27, 2000. The case was submitted to this Court on November 21, 2000, and oral argument was heard on February 13, 2001.

When nurse Robin Jones was changing Adriana's diaper, she noticed bright red blood around the child's anus and tears in the child's rectum. The injury appeared recent as there were no scabs or signs of healing. At this point post-mortem care stopped and the police were called.

¶ 4 From the autopsy, the forensic pathologist opined that head and abdominal injuries had caused the child's death. She testified that the injuries were probably inflicted upon the child within an hour of her death, although they could have been inflicted up to three hours before she died.

¶ 5 The police interviewed Appellant late in the day on August 22 and into the early morning on August 23. Appellant was subsequently arrested, charged and convicted of the crimes which are the subject of this appeal.

### PROPOSITIONS

¶ 6 On appeal, Appellant raises eighteen propositions of error. In his second proposition, he alleges error which requires that this case be reversed and remanded for a new trial. Thus, this Court will not reach the merits of the other claims which do not require relief. As we are granting relief in this case, we find that Appellant's motions for evidentiary hearings [4] are moot and need not be addressed. In his second proposition Appellant contends the trial court abused its discretion in refusing to remove for cause prospective jurors Thomas Owen and Scott McKinnis. He claims questioning in voir dire established that each of these prospective jurors possessed an actual bias which required dismissal for cause. "Actual bias is present when a juror's views 'prevent or substantially impair the performance of his duties as a juror in accordance with his instruction and his oath.'" *Young v. State,*

1998 OK CR 62, ¶ 9, 992 P.2d 332, 337, *cert. denied,* 528 U.S. 837, 120 S.Ct. 100, 145 L.Ed.2d 84 (1999), *quoting Wainwright v. Witt,* 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985). This Court has held that the trial judge enjoys broad discretion in deciding which members of the venire possess actual bias and should be excused for cause. *Young,* 1998 OK CR 62, at ¶ 9, 992 P.2d at 337. However, we have also espoused the rule that "all doubts regarding juror impartiality must be resolved in favor of the accused.... [This] rule is intended to apply to both the trial courts and the Court of Criminal Appeals." *Hawkins v. State,* 1986 OK CR 58, ¶ 5, 717 P.2d 1156, 1158 (citations omitted). *See also Simpson v. State,* 1992 OK CR 13, ¶ 20, 827 P.2d 171, 175. Further, a juror who cannot impartially decide guilt violates his oath and this is a proper challenge for cause. *Id. See also Dutton v. State,* 1984 OK CR 12, ¶ 9, 674 P.2d 1134, 1138, *cert. denied,* 467 U.S. 1256, 104 S.Ct. 3548, 82 L.Ed.2d 850 (1984).

¶ 7 Appellant first complains that the trial court abused its discretion in declining to remove prospective juror Owen for cause because Owen was a ten year veteran police officer who was biased in favor of the prosecution.[5] During voir dire it was established that Owen knew three of the detectives associated with this case. He had worked with Detective Edwards eight years ago and he knew Detectives Meadows and Loftis. When questioned by defense counsel, Owen agreed that he would tend to give great weight to the police officers' testimony. He also agreed it was possible he would give the police officers more weight and credibility. In response to these statements, defense counsel asked that Owen be removed for cause. The trial court then questioned Owen and asked him, "If he [Detective Edwards]

---

4. Appellant filed an Application for Evidentiary Hearing on Claims the State Acted in Bad Faith in Failing to Preserve Evidence and on Claims of Jury Misconduct and an Application for Evidentiary Hearing on Sixth Amendment Claims.

5. Appellant also argues that Owen was statutorily disqualified from sitting on the jury under 38 O.S.1991, § 28(B)(4). This section provides that, "[j]ailers or law enforcement officers, state or federal, having custody of prisoners" are not

qualified to serve as jurors. The record reflects that Owen was a uniformed Oklahoma City police officer who rode patrol in a marked unit and part of his job was to make arrests. Thus, as he necessarily had custody of prisoners from time to time, I would find that Owen should have been dismissed for cause as he fell within the purview of persons statutorily not qualified to sit as jurors.

came in and testified, would you tend to give his testimony more credence because you know him, even if he said something absurd?" [6] Owen responded, "Not if he were to say something absurd." [7] The trial court's voir dire of Owen did nothing to abate concerns that Owen was biased in favor of the police officers whom he knew and with whom he had worked. To the contrary, it reinforced defense counsel's concerns of bias as it indicated that Owen would give the officers' testimony more credence unless they were to say something absurd. Thus, the record supports Appellant's assertion that Owen was biased toward police officers and accordingly, the trial court abused its discretion in refusing defense counsel's request to remove Owen for cause.

■ ¶ 8 Appellant also complains that the trial court erred in failing to excuse for cause prospective juror Scott McKinnis because he was strongly biased in favor of the death penalty. In *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841, 851–52 (1985), *quoting Adams v. Texas*, 448 U.S. 38, 45, 100 S.Ct. 2521, 2526, 65 L.Ed.2d 581 (1980), the United States Supreme Court held that the proper standard for determining when a prospective juror may be excluded for cause because of his or her views on capital punishment is "whether the juror's views would 'prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath.'" The Court added that this standard does not require a juror's bias be proved with "unmistakable clarity." *Id.* The Supreme Court further addressed the issue in *Morgan v. Illinois*, 504 U.S. 719, 729, 112 S.Ct. 2222, 2229, 119 L.Ed.2d 492 (1992), wherein the Court held that, "[a] juror who will automatically vote for the death penalty in every case will fail in good faith to consider the evidence of aggravating and mitigating circumstances as the instructions require him to do." Such prospective jurors are to be removed from the jury panel for cause. *Id.* The *Morgan* and *Wainwright* decisions require that jurors be willing to go into the

trial with no preconceived notions regarding the appropriate penalty, death or life.

■ ¶ 9 The record in the present case reflects that prospective juror McKinnis stated at the beginning of his voir dire that he had a "strong bias towards the death penalty." [8] He went on to indicate that he had difficulty conceiving of a situation where the death penalty would not be appropriate for someone convicted of this type of crime. After questioning by the trial court, McKinnis stated that he thought he could give both sides a fair trial and he would consider all three punishment options. However, he again indicated that he had a strong bias toward the death penalty. When the prosecutor questioned him, McKinnis indicated that although the child's involvement made it worse, he was biased in favor of the death penalty for murder in general. Finally, when questioned by defense counsel, McKinnis again affirmed that he was not predisposed toward a finding of guilt, but upon such a finding, he was biased toward the death penalty. Defense counsel noted that McKinnis had stated he could consider all three punishments, but when asked directly whether he could *fairly consider* all three, McKinnis responded, "I would say that I would be biased towards the death penalty." [9] At this point, defense counsel asked that McKinnis be excused for cause. The trial court denied this request. When the voir dire of this prospective juror is considered in its totality, it is clear that his strong bias towards the death penalty would prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath. In spite of this clear expression of bias, the trial court denied defense counsel's request that McKinnis be removed for cause. This was error under *Morgan* and *Wainwright*. *See Young*, 1998 OK CR 62 at ¶¶ 13–15, 992 P.2d at 338.

■ ¶ 10 "The long standing rule in Oklahoma is that an improper denial of a challenge for cause will not be prejudicial

---

6. Trial Transcript at 338.

7. Trial Transcript at 338.

8. Trial Transcript at 161.

9. Trial Transcript at 171–72.

unless it can be affirmatively shown in the record that the erroneous ruling reduced the number of the appellant's peremptory challenges to his prejudice.... In order to show prejudice, the appellant must demonstrate that he was forced, over objection, to keep an unacceptable juror." *Hawkins,* 1986 OK CR 58 at ¶ 6, 717 P.2d at 1158 (citations omitted). *See also Powell v. State,* 1995 OK CR 37, ¶ 14, 906 P.2d 765, 772, *cert. denied,* 517 U.S. 1144, 116 S.Ct. 1438, 134 L.Ed.2d 560 (1996). Because the trial court erroneously refused to remove both Owen and McKinnis for cause, Appellant was placed in the unenviable position of having to decide which of these two biased jurors to excuse with his single remaining peremptory challenge. Appellant removed McKinnis, but was forced to keep Owen, a biased juror who should have been removed for cause. Thus, Appellant has shown that he was prejudiced by the trial court's error.

¶ 11 The United States Supreme Court has held that the right to a trial by an impartial jury lies at the heart of due process. *See, e.g., Irvin v. Dowd,* 366 U.S. 717, 721–22, 81 S.Ct. 1639, 1641–42, 6 L.Ed.2d 751 (1961). Due process requires both "a jury capable and willing to decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." *Smith v. Phillips,* 455 U.S. 209, 217, 102 S.Ct. 940, 946, 71 L.Ed.2d 78 (1982). Thus, the trial court's error in the present case violated Appellant's due process rights under the United States Constitution. This error, which affected the very foundation of the trial, requires that Appellant's Judgment and Sentence be reversed and the case remanded for a new trial.

■■■ ¶ 12 Appellant also raises meritorious allegations in his seventh proposition wherein he complains of error affecting the second stage proceedings. The trial in this case began with voir dire on Monday, March 8, 1999. The first stage of trial ended on

Thursday, March 11, 1999. At around 5:00 p.m. on Thursday, after the jury had returned its guilty verdict, the trial court announced that court was in recess until 9:00 a.m. the following morning. The court then asked the attorneys if they had their witnesses ready to go. Both the prosecutor and defense counsel responded that they were ready. The second stage of trial began the following morning, on Friday, March 12, 1999.

¶ 13 After the jury had been dismissed for lunch on Friday, defense counsel advised the trial court that Appellant's mother, Rosa Jacinto, had agreed to testify in mitigation and was scheduled to be there already, but he had spoken with her on the telephone that day, and she had advised him that she could not arrive until Monday because she had a broken leg and was having transportation problems. Defense counsel asked that he be allowed to continue his second stage case until Monday so that this witness could testify. When the trial court asked defense counsel what he expected this witness' testimony to be, defense counsel responded that Ms. Jacinto would testify about her relationship with her son and the impact that a death sentence would have on her. The trial court suggested that the State could stipulate to this testimony and the State agreed. Defense counsel noted that a stipulation to this testimony would not be effective and would fall far short of the impact live testimony could deliver. The trial court overruled defense counsel's request for a continuance and suggested that a stipulation was better than nothing. The trial commenced and later that afternoon defense counsel proceeded to second stage without any witnesses.[10] After the defense rested, the trial court told the jury that they could receive instructions and deliberate immediately, or they could wait until Monday to finish the case.

■■■ ¶ 14 Appellant complains in his seventh proposition that the trial court abused its discretion in refusing to grant his request for a continuance from Friday afternoon until

10. Defense counsel stated in five sentences that Appellant's mother wanted to be there but could not because she had a broken leg and could not drive herself from San Antonio to Oklahoma.

He stated that she if she were there she would testify that, "she loves her son very much and that it would be devastating for her if he were sentenced to death."

Monday morning. "The decision to grant or deny a motion for continuance is addressed to the sound discretion of the trial court whose decision will not be disturbed unless an abuse of discretion is proved." *Douglas v. State,* 1997 OK CR 79, ¶ 56, 951 P.2d 651, 669, *cert. denied,* 525 U.S. 884, 119 S.Ct. 195, 142 L.Ed.2d 159 (1998). The State responds that because defense counsel did not follow the proper procedure and file a written motion for continuance accompanied by an affidavit, the trial court cannot be found to have abused its discretion in denying the motion. *See* 12 O.S.1991, § 668. *See also Harris v. State,* 1992 OK CR 74, ¶¶ 8–9, 841 P.2d 597, 599–600.

■ ¶ 15 It is true that defense counsel did not file a written motion for a continuance, as is required by Oklahoma law. However, we will not automatically dismiss Appellant's argument based upon defense counsel's failure to follow this procedural mandate for to do so would discount the importance of mitigating evidence to a capital trial. It is beyond dispute that mitigating evidence is critical to the sentencer in a capital case. *See Skipper v. South Carolina,* 476 U.S. 1, 106 S.Ct. 1669, 90 L.Ed.2d 1 (1986); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978). "As the Supreme Court has often noted, the Constitution requires individualized sentencing, and mitigating evidence is an important factor in ensuring this right." *Fitzgerald v. State,* 1998 OK CR 68, ¶ 41, 972 P.2d 1157, 1173, *citing Lockett,* 438 U.S. at 605, 98 S.Ct. at 2965. While the Eighth Amendment does not require mitigating evidence be presented in a capital trial, it does require that a defendant be given the opportunity to present such evidence. *See Pickens v. State,* 2001 OK CR 3, ¶ 47, 19 P.3d 866, 882.

■ ¶ 16 Thus, in light of the indisputable importance of mitigating evidence to the second stage of a capital trial, we find that defense counsel was ineffective for failing to follow the statutorily mandated procedure for requesting a continuance in this case so that he could present evidence in mitigation. It was incumbent upon defense counsel to make sure that his second stage witnesses would be available and ready to testify when re-quired. When Ms. Jacinto had not arrived in Oklahoma City by Thursday, defense counsel should have contacted her to find out whether she would be there by Friday morning. If he learned that she would not be there or if he could not reach her, he should have prepared a proper motion for continuance to present to the trial court if necessary. By failing to do this, we find that defense counsel's performance was deficient. We further find that Appellant was prejudiced by the deficient performance as it deprived him of a substantial right to which the law entitled him. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984).

. ¶ 17 We also find that in the present case, even absent a written motion for continuance and supporting affidavits, the trial court had information sufficient to support Appellant's request for a one day continuance. That this continuance would not have caused any inconvenience upon the trial court is evinced by the trial court's offer to the jury to receive instructions and begin deliberations on Monday. Thus, under the specific and limited circumstances of this case, we find the trial court abused its discretion in refusing to allow defense counsel one additional day to procure the second stage mitigation witness.

¶ 18 In light of the first and second stage error discussed above, we find that this case must be **REVERSED** and **REMANDED** for a **NEW TRIAL.**

JOHNSON, V.P.J., and CHAPEL, J., concur.

LUMPKIN, P.J., concur in result.

LILE, J., concur in result in part/dissent in part.

LUMPKIN, Presiding Judge: concur in results.

¶ 1 I concur in the results reached by the Court and agree this case must be reversed and remanded for a new trial. However, I write separately to address the following concerns.

¶ 2 I agree with the Court's analysis that prospective juror Scott McKinnis should

have been excused for cause, based on his bias in favor of the death penalty. Under the requirements set forth in *Morgan v. Illinois, Wainwright v. Witt* and *Adams v. Texas,* prospective juror McKinnis should have been excused for cause. Because Mr. McKinnis was not removed, defense counsel was required to use his last peremptory challenge to excuse him. Defense counsel made a thorough record as to how the peremptory challenge would have been used had he not been placed in the position he was placed due to the court's failure to remove Mr. McKinnis for cause. Therefore, this error has been preserved for our review and warrants reversal of this case for a new trial.

¶ 3 However, I disagree with the Court's analysis concerning prospective juror Thomas Owen. I do not believe Mr. Owen was statutorily disqualified from serving as a juror. The language of 38 O.S.1991, § 28(B), is specific and clear. When subpart 3 is read in conjunction with subpart 4, it reveals the Legislature was unequivocal in providing that "sheriffs or deputy sheriffs" are not qualified to serve as jurors. 38 O.S.1991, § 28(B)(3). However, subpart 4 contains a qualifier which provides that "jailers or law enforcement officers, state or federal, having custody of prisoners" are not qualified to serve as jurors. 38 O.S.1991, § 28(B)(4). If the Legislature had intended all law enforcement officers to be disqualified to serve as jurors, they would have specifically said so as they did in relation to sheriffs or deputy sheriffs. However, as to other law enforcement officers or jailers, the qualification is limited to "having custody of prisoners".

¶ 4 In this particular case there was no showing that prospective juror Owen had custody of prisoners and, therefore, was statutorily disqualified from serving on this jury. It would appear, when reading subpart 3 with subpart 4, the Legislature is consistent in disqualifying those individuals who serve in a capacity where they have the responsibility of maintaining jails or being responsible for the custody of prisoners. In Oklahoma, sheriffs have historically had that responsibility of maintaining county jails and having custody of prisoners. Other law enforcement officers, unless assigned to duties as jailers, do not have that responsibility.

¶ 5 Further, I disagree with the Court's finding that the *voir dire* transcript shows prospective juror Owen was biased and unable to be a fair and impartial juror. Mr. Owen was consistent in his assertion he believed he could be fair to both sides possessed actual bias or should have been dismissed for cause.

¶ 6 I do agree that trial counsel's failure to follow the statutory procedure and file a written motion for continuance with the attached affidavit was an action which constituted ineffective assistance of counsel. Our caselaw is replete with citations to the principal of law that the failure to file an affidavit in support of a motion for continuance is fatal unless a procedural failure constitutes a substantial violation of appellant's rights. *See Harris v. State,* 841 P.2d 597, 600 (Okl.Cr. 1992); *Shelton v. State,* 793 P.2d 866, 876 (Okl.Cr.1990); *Ellis v. State,* 795 P.2d 107, 109 (Okl.Cr.1990); *Hunnicutt v. State,* 755 P.2d 105, 109 (Okl.Cr.1988); *Duckett v. State,* 711 P.2d 944, 946 (Okl.Cr.1985). It is without question counsel was ineffective for failing to follow the law. This is especially true since trial counsel had, on Thursday, advised the court there would be no problem in proceeding on Friday with his case.

¶ 7 The issue then becomes was it an abuse of discretion due to the fact the defendant has suffered prejudice by reason of counsel's failure to follow the law. I will agree with the Court that Appellant was prejudiced in this matter. Trial counsel failed to follow statutory procedures for obtaining a continuance, and failed to subpoena the mitigation witness or take any steps to ensure her appearance at trial.

¶ 8 Additionally, the record indicates the requested continuance would not have burdened the trial court. As the Court's opinion relates, after the defense rested, the trial court told the jury they could receive instructions and deliberate that day, Friday, or wait until Monday. If the trial judge could accommodate the jurors, he could have likewise accommodated the defendant under this fact situation. For these reasons, I agree this

case must be reversed and remanded for a new trial as to guilt, as well as sentencing.

LILE, Judge: concurs in results in part and dissents in part.

¶1 I Concur in Result as to the Court's reversal and remand of the second stage verdict of death. Failure to grant the requested continuance until Monday when the jury was offered the choice of waiting until Monday to begin deliberations was improper. Appellant's persuasive argument on appeal on this issue convinces me that if a continuance had been granted, the result might have been different. However, I cannot join in the Court's analysis or decision to reverse the first stage verdict of guilt.