HENRY, Chief Judge,
concurring in part and dissenting in part.
I concur fully with the majority’s opinion, except for its analysis of the prejudice component of Mr. Young’s ineffective assistance of counsel claim. On that claim, my concern is that neither the jury, a state court, nor the federal district court ever heard the mitigating evidence that Mr. Young seeks to present.
In this capital case, we must be mindful of the principle that “sentences of death are ‘qualitatively different’ from prison sentences,” and that, as a result, “[the Supreme Court] has gone to extraordinary measures to ensure that the prisoner sentenced to be executed is afforded process that will guarantee, as much as is humanly possible, that the sentence was not imposed out of whim, passion, prejudice, or mistake.” Eddings v. Oklahoma, 455 U.S. 104, 117-18, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982) (O’Connor, J., concurring) (quoting Woodson v. North Carolina, 428 U.S. 280, 305, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976) (opinion of Stewart, Powell, and Stevens, JJ.)). I would therefore remand the case to the district court for an evidentiary hearing that would allow both Mr. Young and the government to present evidence regarding the prejudicial effect, if any, of the deficient performance of Mr. Young’s trial counsel.
In explaining my views, I will begin with my understanding of the majority’s analysis and then turn to the standard that I would apply. Finally, I will explain why I believe Mr. Young is entitled to an eviden-tiary hearing under that standard.
The majority concludes that Mr. Young has failed to establish that his trial counsel’s deficient performance prejudiced him. In addition to basing its opinion on “[the] aggravating circumstances ... clearly established by the prosecution’s first-stage evidence,” maj. op. at 967, the majority details the impact of the potential testimony of the prosecution’s three rebuttal witnesses. The majority concludes that the testimony of these witnesses could have led the jury “reasonably [to] have found the existence of the continuing threat ag-gravator,” which in turn would have been upheld by the OCCA. Maj. op. at 967. Additionally, in the majority’s view, this testimony (which was never presented) “would ... have increased the likelihood of the jury concluding that the murders were part of a pattern of violent conduct by [Mr.] Young towards women who rejected his sexual advances.” Id.
Further, the majority concludes that none of the mitigating circumstances invoked by Mr. Young substantially reduce his culpability for the two murders. In the majority’s view, these circumstances do not place Mr. Young outside the realm of *974 the average person. Moreover, Dr. Wanda Draper’s opinions regarding Mr. Young’s psychological and emotional attributes are not “particularly insightful or persuasive.” Id. at 968. Additionally, “[Mr.] Young’s reaction to his emotional distress could have been viewed by the jury as a negative factor, i.e., it could have been considered by the jury as making [Mr.] Young a particularly dangerous person, capable of extreme violence in reaction to relatively common life events.” Id.
In my view, the flaw in this approach is its reliance on information that was never presented from the witness stand. What we know of the prosecution’s rebuttal witnesses comes from a pleading filed by the prosecutor that merely summarizes anticipated testimony, while, as to Mr. Young’s mitigation witnesses, we have only affidavits. Moreover, the lack of a well-developed factual record cannot be imputed to Mr. Young. Instead, it was Mr. Young’s counsel’s deficient performance that kept the mitigation evidence from the jury. And in the state post-conviction and federal habeas proceedings, the courts denied Mr. Young’s requests for an evidentiary hearing.
As a result, I believe that the proper standard for assessing Mr. Young’s claims of prejudice is whether “his allegations, if true and if not contravened by the existing factual record, would entitle him to habeas relief.” Bland v. Sirmons, 459 F.3d 999, 1033 (10th Cir.2006) (quoting Miller v. Champion, 161 F.3d 1249, 1253 (10th Cir.1998)). If so, he is entitled to an evidentia-ry hearing. Id. Importantly, I view “the existing factual record” as the evidence presented at trial, which Mr. Young had an opportunity to contest. See generally Wilson v. Sirmons, 536 F.3d 1064, 1079 (10th Cir.2008) (distinguishing between “non-record evidence” and “the trial record” in discussing the standard of review under AEDPA).
“The existing factual record” does not include the prosecution’s summary of rebuttal witnesses’ testimony, on which the majority relies here. That limitation is grounded in the Due Process Clause, which ensures that a defendant is provided with an opportunity to test or rebut the prosecution’s evidence before it is used against him, Simmons v. South Carolina, 512 U.S. 154, 161, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), as well as the Eighth Amendment, which “imposes a heightened standard for reliability in the determination that death is the appropriate punishment in a specific case.” Id. at 172, 114 S.Ct. 2187 (Souter, J., concurring) (collecting cases) (internal quotation marks omitted).[1]
*975 Here, Mr. Young’s allegations are not contravened by the existing factual record and, accepted as true, warrant an eviden-tiary hearing on his claim for ineffective assistance of counsel. There is no dispute that “the investigatory efforts of [Mr.] Young’s trial counsel fell far short of the prevailing standards for capital defense work[,]” thereby establishing the first element of the claim. Maj. op. at 957; see generally Strickland v. Washington, 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Indeed, the state’s counsel commendably acknowledged at oral argument that “I don’t think that there’s a reviewing court in the land today that would say there’s no deficient performance, even though this is not a case where nothing was done.”
As to the second element — whether the deficient performance was prejudicial— Mr. Young must demonstrate a “reasonable probability” that counsel’s performance prejudiced him, meaning a probability “sufficient to undermine confidence in the outcome.” Id. That is less than a preponderance of the evidence, for “a defendant need not show that counsel’s deficient performance more likely than not altered the outcome of the trial.” Id. at 693, 104 S.Ct. 2052 (emphasis supplied).
Based on Mr. Young’s affidavits, the jury could have heard Mr. Young’s sons state that their father’s life still has value to them and that they would visit him in prison. The failure to present similar testimony has been deemed prejudicial. See, e.g., Williams v. Anderson, 460 F.3d 789, 805 (6th Cir.2006) (“In addition to presenting the jury with mitigating evidence, the testimony of Petitioner’s family and friends would have humanized Petitioner. Thus, the evidence listed above creates a reasonable probability that one juror would have voted against death.”); Marshall v. Cathel, 428 F.3d 452, 470 (3d Cir.2005) (“[N]ot only were Marshall’s boys willing to testify, but that the sort of things to which they were prepared to testify [that they loved their father and wanted the jury to spare his life] could have served as powerful mitigation evidence.”); Warner v. State, 29 P.3d 569, 574-75 & n. 10 (Okla.Crim.App.2001) (finding prejudice where counsel failed to present live testimony from the defendant’s mother that “she loves her son very much and that it would be devastating for her if he were sentenced to death”); cf. Coddington v. State, 142 P.3d 437, 459 (Okla.Crim.App.2006) (“The humanizing effect of live testimony in the form of a mother testifying for her son as mitigation evidence in a capital murder trial cannot seriously be disregarded as irrelevant.” (collecting cases)).
The jury could also have heard Dr. Wanda Draper explain that emotional trauma due to Mr. Young’s overprotective mother, the loss of close relatives due to sickle cell anemia, and the potential loss of his relationship with Joyslon combined with alcohol use affected Mr. Young’s mental state, making him less culpable. In Dr. Draper’s view, Mr. Young’s actions “could have been a result of distortion in his rational thinking by way of severe trauma to the limbic system in the midbrain” due to the severe emotional trauma and use of alcohol. Wanda Draper affidavit at 13. Dr. Draper’s opinions suggest that Mr. Young’s be *976 havior was not the product of cold-blooded premeditation but a compulsive reaction for which he is less culpable.
Like the testimony of family members, this kind of evidence of mental or emotional instability is strong mitigation evidence in capital cases. The Supreme Court has recognized that evidence tending to diminish moral culpability is relevant to determine prejudice, especially evidence “consistent with the view that [the defendant’s] violent behavior was a compulsive reaction rather than the product of cold-blooded premeditation.” Williams v. Taylor, 529 U.S. 362, 398, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); see also Smith v. Mullin, 379 F.3d 919, 943-44 (10th Cir.2004) (observing that “[t]he jury ... never received an explanation for [the defendant’s] behavior” and concluding that counsel’s deficient performance was prejudicial).
I certainly agree with the majority that Dr. Draper’s testimony may be called into question and that there may well be aspects of Mr. Young’s past behavior that could have been introduced to support a continuing threat aggravator. I also believe that the majority correctly emphasizes the brutality of the murders. However, without hearing the mitigating evidence, the jury did not know what to weigh against this brutality: we do not know what turned Mr. Young from a minister into a murderer. Cf. Hoffman v. Arave, 236 F.3d 523, 536 (9th Cir.2001) (“Without the benefit of an evidentiary hearing, it is impossible to evaluate the strength of [the petitioner’s] defense at trial and sentencing. Therefore, we cannot conclude as a matter of law that there is no reasonable possibility that offering expert testimony and a thorough history of [the petitioner’s] educational, medical, and psychological problems at the time of the murder might have reduced the likelihood that the death penalty would have been imposed.”). Accordingly, I would commit these questions to the wisdom of the district court, which would have the important opportunity, which we do not, of hearing witnesses testify under oath at an evidentiary hearing, and which would allow both the Mr. Young and the government the chance to respond to their adversaries’ evidence. See generally Boumediene v. Bush, — U.S. -, 128 S.Ct. 2229, 2270, 171 L.Ed.2d 41 (2008) (noting that “[fjederal habeas petitioners long have had the means to supplement the record on review, even in the postconviction habeas setting”).
Unlike the majority, I do not think that a remand for an evidentiary hearing would “necessitate [either] allowing the government to put on all the evidence that was originally presented during the first stage of [Mr.] Young’s trial” or transform a mixed question of law into a purely factual matter. Maj. op. at 971. In particular, as part of its prejudice inquiry, the district court could review the trial court record (as we have), allow the parties to present additional relevant evidence, and then proceed to make both factual findings and legal determinations. Cf. Smith v. Mullin, 379 F.3d 919, 935-44 (10th Cir.2004) (noting that the district court was not convinced by a diagnosis by one of the petitioner’s experts and that “we must defer to this credibility determination” but also reviewing the district court’s legal conclusion that the petitioner had not established prejudice under Strickland). The circumstances warranting a hearing here — clear and admitted deficient performance, a failure to present any mental health testimony, an incorrect application of procedural bar, and psychological evaluations from expert witnesses that were funded by the state but never heard by any factfinder— will not be present in every case alleging *977 that counsel failed to present mitigating evidence.
In summary, at this stage of the proceedings, I believe that, accepting Mr. Young’s allegations as true, “the ... mitigating evidence, taken as a whole, might well have influenced the jury’s appraisal of [Mr. Young’s] moral culpability,” Wiggins v. Smith, 539 U.S. 510, 538, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (internal quotation marks omitted), and the likelihood of a different result if the evidence had been considered is “sufficient to undermine confidence in the outcome” actually reached at sentencing. Strickland, 466 U.S. at 694, 104 S.Ct. 2052. I would therefore remand the case to the district court for an eviden-tiary hearing on the prejudice component of Mr. Young’s ineffective assistance of counsel claim.

. I acknowledge that Mr. Young's counsel did not ask for a certificate of appealability (COA) as to the district court’s denial of his request for an evidentiary hearing. However, his counsel did ask for COA on the rejection of his ineffective assistance of counsel claim and argued, in his opening brief, that "[a]n evi-dentiary hearing, if held, ... would have revealed powerful evidence that Mr. Young could have used to convince a jury that the state had not met its burden to show that aggravating circumstances outweighed mitigating circumstances, or in the alternative, to show mercy despite its verdict on the weighing decision.” Aplt’s Br. at 19.
Accordingly, I believe that this court has discretion to remand the case for an eviden-tiary hearing on that claim. See Houston v. Schomig, 533 F.3d 1076, 1083 n. 4 (9th Cir.2008) ("While the dissent correctly points out that neither party formally requested an evi-dentiary hearing, Houston raised the need for such a hearing during oral arguments. Moreover, we have previously remanded for an evidential hearing sua sponte ‘to assist the court in making an accurate determination.’") (quoting Butler v. Curry, 528 F.3d 624, 651 (9th Cir.2008) (emphasis supplied)); see also Mancill v. Hall, 545 F.3d 935, 939 (11th Cir. Oct. 17, 2008) (ordering supplemental briefing on the issue of whether the district court *975 erred in denying the petitioner’s request for an evidentiary hearing, even though the court had granted a COA only on the issue of "[w]hether the district court erred when it denied appellant’s ineffective assistance of counsel claims as unexhausted and procedurally defaulted”); Winfield v. Roper, 460 F.3d 1026, 1040 (8th Cir.2006) (observing that the court has "the discretion to expand the certificate of appealability” and that "we exercise that discretion carefully”).