2009 OK CR 15

**Richard Norman ROJEM, Jr., Appellant**

v.

**The STATE of Oklahoma, Appellee.**

**No. D–2007–660.**

Court of Criminal Appeals of Oklahoma.

April 15, 2009.

Mary S. Bruehl, Gary L. Henry, Oklahoma Indigent Defense, Capital Trial Division, Norman, OK, attorneys for defendant at trial.

Dennis Smith, District Attorney, Angela C. Marsee, Assistant District Attorney, Arapaho, OK, attorneys for the State at trial.

Janet Chesley, Traci J. Quick, Appellate Defense Counsel, Capital Direct Appeals Division, Oklahoma Indigent Defense System, Norman, OK, attorneys for appellant on appeal.

W.A. Drew Edmondson, Attorney General of Oklahoma, Seth S. Branham, Assistant Attorney General, Oklahoma City, OK, attorneys for appellee on appeal.

## OPINION

CHAPEL, Judge.

¶ 1 Richard Norman Rojem, Jr. was tried by jury and convicted of kidnapping, rape and first degree murder in the District Court of Washita County, Case No. CRF–84–35. On appeal, this Court affirmed the convictions and sentences.[1] The United States Court of Appeals for the Tenth Circuit granted relief from the death sentence.[2] A resentencing trial was held in Washita County, Rojem was again sentenced to death, and this Court reversed that sentence and remanded the case for resentencing (*Rojem* 2).[3] Pursuant to Rojem's motion for change of venue, the second resentencing hearing was held in Custer County, Case No. CF–2006–370. The jury in Rojem's second resentencing trial found that (1) Rojem was previously convicted of a felony involving the use or threat of violence to the person; (2) the murder was especially heinous atrocious or cruel, and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest or prosecution. In accordance with the jury's recommendation the Honorable Charles L. Goodwin imposed the death penalty. Rojem appeals from this sentence.

¶ 2 A full recitation of the facts of this case is set forth in *Rojem v. State*.[4] Briefly, Rojem took Layla Cummings, his former step-daughter, from her Elk City apartment on July 6 or 7, 1984. She was found face-down in a field near Burns Flat around 9:00 a.m. on July 7th, wearing a pink nightgown. She was gagged, had been sexually assaulted, and was stabbed several times.

### Issues Regarding Jury Selection

¶ 3 In Proposition III Rojem claims the trial court committed reversible error by improperly denying his challenge for cause against two prospective jurors. After the challenges were denied, Rojem removed the prospective jurors from the jury panel using peremptory challenges. He claims these rulings were error and violated his constitutional right to due process, a fair trial and a reliable sentencing proceeding as well as his statutory right to nine peremptory challenges.[5] Rojem used his remaining peremptory challenges, requested two additional challenges, and specified which sitting jurors he would excuse and why they were unacceptable to him. This issue is thus preserved for appellate review.[6] The trial court has broad discretion when considering a request to excuse a juror for cause.[7] A juror should be able to consider all penalties, and his or her views should not prevent or substantially impair the performance of his or her duties as a juror in accordance with her instruction and oath.[8] In reviewing these claims, we look to the juror's entire *voir dire* record.[9]

¶ 4 Rojem first argues that the trial court erred in refusing to excuse panelist M for cause. He claims M was confused by

---

1. *Rojem v. State*, 1988 OK CR 57, 753 P.2d 359. This Court denied Rojem's applications for postconviction relief. *Rojem v. State*, 1992 OK CR 20, 829 P.2d 683; *Rojem v. State*, 1995 OK CR 1, 888 P.2d 528.

2. *Rojem v. Gibson*, 245 F.3d 1130 (10th Cir. 2001).

3. *Rojem v. State*, 2006 OK CR 7, 130 P.3d 287.

4. 1988 OK CR 57, ¶¶ 2–5, 753 P.2d 359, 361–62. *See also Rojem v. Gibson*, 245 F.3d at 1134.

5. The State inexplicably suggests that this is not a constitutional issue. The Oklahoma cases on which the State relies treat this as a constitutional claim, and this Court has held that the failure to give a defendant charged with first degree murder all nine statutory peremptory challenges is structural constitutional error. *Golden v. State*, 2006 OK CR 2, ¶ 18, 127 P.3d 1150, 1154–55 (trial court allowed defendant five peremptory challenges rather than nine).

6. *Hanson v. State*, 2003 OK CR 12, ¶ 11, 72 P.3d 40, 48–49.

7. *Young v. State*, 1998 OK CR 62, ¶ 9, 992 P.2d 332, 337.

8. *Warner v. State*, 2001 OK CR 11, ¶ 8, 29 P.3d 569, 573; *Wainwright v. Witt*, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985).

9. *Matthews v. State*, 2002 OK CR 16, ¶ 16, 45 P.3d 907, 915.

the concept of aggravating circumstances and mitigating evidence. The record shows that this is true, but shows that much of M's confusion was in response to the specific wording of defense counsel's questions. Reading the extensive record of M's *voir dire* as a whole, it is clear that M initially had difficulty understanding the meaning of "mitigating," and thought it referred to guilt. She alluded to this several times, wondering why the trial court wanted her to consider what she clearly thought was evidence going to guilt although Rojem had been convicted and his guilt already determined. Defense counsel, apparently trying not to complicate the issue, phrased questions about mitigating circumstances in the language of the instructions. This did not lessen M's confusion. The trial court suggested that defense counsel rephrase the questions. Counsel explained that the State would present evidence in support of the aggravating circumstances and Rojem would present evidence which would support a punishment of less than death. M then said she could listen to all the evidence presented and consider all three possible punishments. She also stated she could fairly consider all three punishments even though Rojem was guilty of the unjustified, intentional and premeditated murder of a child. When asked whether she'd want someone like herself on the jury, M stated that she wasn't sure how to answer the question. She said she had no problem being fair and taking everything under consideration but she had never before been in a courtroom. The totality of the record does not support Rojem's claim that M refused to consider mitigating circumstances. Rather, M stated she could consider all the mitigating evidence, once she understood what it was. The trial court did not abuse its discretion in refusing to excuse M for cause.

█ ¶5 Rojem also claims the trial court should have excused panelist H for cause. H admitted that she had researched Rojem's case on the Internet, and stated that though it would be difficult to set aside what she had learned she could do so. She stated she did not remember many details about the case. On her juror questionnaire H had written that she felt she was an advocate for children because she is a special education teacher and has a disabled daughter. When asked about this statement during *voir dire* H said she felt the questionnaire questions were a little misleading. After thinking about the questions and listening to the *voir dire* process, H stated she had an open mind and could listen to all the evidence presented. She said that although she felt parole was a gray area, she could give meaningful consideration to a life sentence and was not leaning toward any particular sentence. Nothing in the record supports Rojem's claim that H could not set aside any knowledge she had of the case, consider mitigating evidence, or fairly consider all three punishments. The trial court did not abuse its discretion in refusing to excuse H for cause.

¶6 In summary, both panelists M and H initially expressed reservations about aspects of capital punishment which would cast doubt on their fitness for jury service. However, each panelist said she could consider all the evidence presented and give meaningful and fair consideration to all three punishments. The trial court did not err in denying Rojem's challenges for cause.

### Issues Relating to the Sentencing Stage of Trial

█ ¶7 Rojem argues in Proposition I that the trial court violated his constitutional right to present a defense to the State's case for death. Rojem's primary expert witness was Dr. Cunningham, a forensic psychologist. Cunningham created a developmental profile for Rojem explaining the formative basis for his decision-making, as well as a risk assessment profile to determine his potential for future dangerousness in prison. To assist in forming and expressing his opinions, Cunningham used as a model a nationally-known study done by the United States Department of Justice (DOJ) which is used in federal and state courts and by researchers nationwide. Cunningham and defense counsel intended to present his testimony by means of question and answer using as a demonstrative aid a PowerPoint presentation. The PowerPoint slides, offered as defense exhibits 20 and 21, contained explanations of the processes Cunningham used in forming his opinions, the results of his interviews and examinations

surrounding Rojem, and his conclusions. The slides were designed in PowerPoint "bullet" fashion, allowing more information to appear on the screen as the witness reached different points in his testimony. Several slides, referring to the study Cunningham used as his model, contained a reference to the United States Department of Justice, which promulgated the study. The State had notice of this demonstrative aid, which necessarily contained hearsay from the interviews on which Cunningham based his opinions and conclusions. The State's only objection to the PowerPoint was the possibility that jurors might have it as a separate exhibit; Rojem agreed and did not seek to admit the PowerPoint or its printed versions for jurors to use in deliberations.

¶ 8 Cunningham began his testimony by explaining the nature of his research and analysis regarding both developmental decision-making factors and risk assessment. Defense counsel asked him if this wasn't just a fancy mumbo-jumbo excuse and Cunningham replied, "Not according to the U.S. Department of Justice." The trial court stopped the proceedings. Defense counsel attempted several times to explain that Cunningham was merely referring to a study used nationwide, created by the Justice Department, and did not plan to discuss either the DOJ or federal law during the course of the trial. The record suggests that the trial court may not have listened to these explanations and did not understand them. The court stated several times, insistently, that counsel was injecting federal law into the case and he wanted no mention of the DOJ in the courtroom in any form. Counsel agreed and resumed direct examination with the

PowerPoint slides. Almost immediately a written reference to the DOJ appeared, and the trial court stopped proceedings again, ruling that Cunningham could not use any slides which referred to the DOJ. Defense counsel asked for a brief continuance or early lunch to redact the slides and the trial court refused. Cunningham said he believed he could do it within a couple of minutes. The trial court agreed to wait briefly, but then threatened to strike the entire testimony. Cunningham stated he believed he had removed all DOJ references from the Power-Point, but the trial court saw one intact.[10] The court stated the trial was being delayed and ruled that Cunningham and defense counsel could not use the PowerPoint as a demonstrative aid for the jury. The court ruled that counsel could proceed by asking questions based on Cunningham's study in a question-and-answer format, with no reference to the DOJ. Counsel, who had prepared for Cunningham's testimony using the PowerPoint, asked for a brief continuance to consult Cunningham regarding a question-and-answer process without the slides. This request was denied. Rojem's later request for a mistrial based on these rulings was denied.

¶ 9 Rojem, like every criminal defendant, has a Sixth Amendment right to present a defense. While the trial court has broad latitude in the admission of evidence, a defendant must be given a meaningful chance to present his complete defense.[11] Rojem chose to do so, through his expert witness, with a demonstrative aid explaining the expert's research and conclusions. Demonstrative aids may be a valuable addition to expert testimony.[12] Neither the trial court nor the

10. The trial court stated that it saw differences between the slides as shown and the printed version of the PowerPoint. Rojem attempted without success to explain that the PowerPoint was designed in stages, and that each slide would aggregate more information during the course of testimony on that slide.

11. *Holmes v. South Carolina*, 547 U.S. 319, 324, 126 S.Ct. 1727, 1731, 164 L.Ed.2d 503 (2006).

12. *See, e.g., Dunkle v. State*, 2006 OK CR 29, ¶ 65, 139 P.3d 228, 250 (computer animation reconstructions, while potentially prejudicial, may be helpful to jury); *Myers v. State*, 2000 OK CR 25,

¶ 37, 17 P.3d 1021, 1032, *overruled on other grounds James v. State*, 2007 OK CR 1, 152 P.3d 255 (use of overhead projector to enlarge and display photographs aided jurors); *Harris v. State*, 2000 OK CR 20, ¶¶ 10–12 13 P.3d 489, 493–94 (computer reconstructions or reenactments may assist jurors in understanding evidence); *Cleary v. State*, 1997 OK CR 35, ¶ 14, 942 P.2d 736, 743 (use of physical exhibit showing bullet trajectory and path aided jury in understanding medical examiner's testimony); *Moore v. State*, 1990 OK CR 5, ¶ 44, 788 P.2d 387, 398 (written summary of expert's findings aided jury in understanding expert testimony).

State ever suggested the PowerPoint demonstrative aid was inaccurate or irrelevant and the trial court stated it would like to hear Cunningham's testimony without the slides and DOJ references. As the evidence was relevant and otherwise admissible, we search the record for support for the trial court's decision to prohibit the demonstrative aid.

¶ 10 There is no basis in the record for the trial court's ruling. The record does not reflect that any federal law, or the law of any other jurisdiction, was referred to in any way by either party, Cunningham or any other witness. The State suggests that the trial court prohibited the PowerPoint demonstrative aid because the court was afraid reference to the DOJ model would confuse the jury's understanding of Oklahoma law, particularly concerning the continuing threat aggravating circumstance. Nothing in the record supports this assertion. The trial court's concern was clearly and vigorously expressed several times: the court believed that any reference to the U.S. Department of Justice was a reference to federal law generally, not as applied to any issue in the trial, and he would not permit it. The trial court never suggested jury confusion was an issue or concern in the case, and the record does not support any conclusion that the jury would have been misled by the PowerPoint presentation.

¶ 11 There is more basis in the record for the State's suggestion that the trial court was already unhappy because there had been several delays in the trial during the defense case. However, in order to address the trial court's concerns trial counsel asked for an early lunch, a continuance of a few minutes, and a brief moment to speak with his witness. None of these requests would have significantly delayed the trial. The first and third requests were denied and the second was granted but truncated. The trial court may well have been frustrated by defense counsel's difficulties in managing trial time and witness appearances. That frustration is no excuse for the blanket prohibition of relevant and admissible demonstrative evidence.

¶ 12 After a thorough review of the entire record, we agree with the State that this error does not require relief. First, insofar as Cunningham's evidence was directed to the question of whether Rojem was a continuing threat, the testimony was effective. The jury found three other aggravating circumstances but did not find that Rojem presented a potential continuing threat to society.

¶ 13 Cunningham's evidence was designed to do more than address the issue of continuing threat; the bulk of the presentation went to mitigation. We turn to the question of whether Rojem was prejudiced by the limited presentation of Cunningham's research and conclusion on the issue of development and decision-making. Rojem claims that the exclusion of the information on the Power-Point slides was unfairly prejudicial. He argues that the slides contained significantly more information than could be presented in oral question-and-answer form, and that counsel was unable to cover all the material present on the slides. He claims Cunningham was unable to present Rojem's complete social history without use of the demonstrative aid. Although in some areas the PowerPoint presentation contained more detail, the record shows that Cunningham presented ample oral testimony of Rojem's early childhood development as well as his behavior while incarcerated. Cunningham discussed at length Rojem's family background with alcoholism, violence, conflict and anger, including abuse directed at Rojem. Cunningham mentioned Rojem's chaotic childhood household more than once, specifically testifying that the household had thirteen to fifteen people living in a 1500 square foot home. Throughout his testimony Cunningham emphasized the widespread family problems created by alcohol, and the resulting violence. Cunningham did not give details of alleged sexual abuse suffered by Rojem as a child, but did allude to it in his testimony. Cunningham also spoke of other family problems, the violent death of Rojem's father, the poor parenting and role models Rojem experienced, his difficulties in school, the effects of poverty, complications in Rojem's gestation and birth, his subsequent early childhood surgery and years in a body cast, and adverse genetic predispositions. Rojem's

mother also testified regarding her pregnancy, Rojem's premature birth and physical problems, the chaotic household conditions, and family alcoholism and conflict. Rojem's high school girlfriend testified that the family often got drunk together, were belligerent and fought.

¶ 14 As Rojem notes, the trial court's ruling prevented Cunningham from explaining to the jury the underlying basis of his opinion, as it rested on the information found in the DOJ study and he was not allowed to refer to that study. Although an expert must disclose these bases if asked by either party, both parties were prohibited from asking Cunningham the basis of his opinion.[13] This may have hindered jurors' assessment of the credibility of Cunningham's conclusions. However, jurors did hear that Cunningham relied on a nationally known and accepted study, and were able to assess his credibility through his testimony.

¶ 15 While we find that the trial court abused its discretion in refusing to allow Rojem's expert witness to use demonstrative aids during his testimony, Cunningham and other witnesses were able to present a great deal of information regarding Rojem's development and factors related to his ability to make good decisions. The record shows that jurors were able to use this information in their deliberations. For that reason, this Court finds that the trial court's error does not require relief. However, trial courts are strongly cautioned to take care in prohibiting defense exhibits on mitigating evidence during the second stage of a capital trial.

¶ 16 In Proposition II Rojem claims the trial court erred in refusing to allow him to present the testimony of a witness by transcript without first showing that the witness was unavailable to testify. In Rojem's 2003 resentencing trial, defense DNA expert Brian Wraxall testified that he tested DNA evidence from the victim's fingernails and found that Rojem was excluded as a source. Rojem sought to introduce this evidence in the current resentencing trial, filing a motion to admit the evidence through the 2003 transcript. The trial court failed to rule on this motion at a pretrial hearing, and again at the beginning of trial, despite Rojem's repeated requests for a ruling. The trial court finally ruled on the motion several days into the trial, after the defense had already called eight witnesses.[14] The motion was denied on the grounds that Rojem had not shown Wraxall was unavailable as a witness. Rojem claims this decision was error.

¶ 17 As we discuss below, the trial court's decision, based on the statutory provision allowing admission of transcripts in capital resentencing cases, was error. However, the evidence was inadmissible on other grounds. In *Rojem 2*, discussing the 2003 resentencing trial, we noted that this exact evidence went to residual doubt of Rojem's guilt.[15] We held in that case that residual doubt evidence is not admissible in a capital resentencing trial where its only purpose is to re-raise the question of a defendant's guilt.[16] Rojem encourages this Court to reconsider that decision and find that residual doubt evidence is appropriate in capital resentencing cases.

---

**13.** *Lewis v. State*, 1998 OK CR 24, ¶ 19, 970 P.2d 1158, 1167.

**14.** We note that there appears to be no reason in the record for the trial court's delay. While suggesting it would deny the motion, the trial court repeatedly stated it could not rule on the motion until it knew what the evidence would be. However, after the adverse ruling, defense counsel sought to make a record regarding the proffered testimony. The trial court would not allow it, stating that the testimony from 2003 was already in the record, which was voluminous. The record of this proceeding shows that the trial court was well aware of the proposed testimony and could have ruled on the defense request at any time. The trial court based its ruling entirely on the transcript question, sidestepping the

State's objection to the testimony as inadmissible residual doubt evidence. By waiting until the defense case was well under way the trial court virtually ensured that counsel could not have the out-of-state witness available during the trial, had counsel wished to offer his live testimony. As the trial court refused to rule on the residual doubt objection, counsel was faced with the expense of a last-minute effort to bring in the witness, knowing that his evidence might well be ruled inadmissible if he appeared.

**15.** *Rojem*, 2006 OK CR 7, ¶ 56 n. 16, 130 P.3d at 298, n. 16.

**16.** *Rojem*, 2006 OK CR 7, ¶ 56, 130 P.3d at 298–99.

We decline the invitation.[17] Although the trial court misapplied the law regarding presentation of evidence by transcript in capital resentencing cases, Rojem suffered no harm because the evidence was inadmissible as going to residual doubt.[18]

¶ 18 We turn briefly to the trial court's erroneous ruling in this case. The capital resentencing statute provides that evidence admitted in the previous trial and sentencing may be introduced by transcript in a capital resentencing trial.[19] Of course, every defendant has a constitutional right to confront witnesses.[20] Interpreting the statute in light of that constitutional mandate, this Court held in *Littlejohn v. State* that the State may not introduce the transcript of previous capital proceedings in a capital resentencing trial without first showing that

the witness is unavailable and the testimony bears indicia of reliability.[21] The trial court cited *Littlejohn* in ruling that Rojem could not introduce Wraxall's transcript testimony under the statute because Rojem had not shown Wraxall was unavailable to testify. This ruling was error. The constitutional protection granting the right of confrontation does not apply equally to the State and the defendant. The Sixth Amendment grants the defendant the right to confront his accusers, but does not grant the State the same right.[22] The statute provides that exhibits and transcripts from the previous capital trial are admissible in a subsequent capital resentencing. Under this statute a defendant may offer the transcript testimony of a previous witness without any further showing.[23] Had we not previously ruled this evidence was inadmissible, Rojem should have

17. I concurred in result in *Rojem 2* without writing separately. At the time I had reservations about our decision to prohibit the use of residual doubt evidence in capital resentencing cases. Upon reflection, I believe residual doubt evidence should be admissible. Among other reasons, I take note of the United States Supreme Court's discussion of the issue in *Oregon v. Guzek*, 546 U.S. 517, 126 S.Ct. 1226, 163 L.Ed.2d 1112 (2006), noting the admissibility at resentencing of evidence which was not available at the original trial. I yield my vote in this case on the principles of the law of the case and *stare decisis*.

18. For this reason, Rojem's suggestion that trial counsel was ineffective for failing to bring Wraxall to testify in court must fail. *Strickland v. Washington*, 466 U.S. 668, 694 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674 (1984) (defendant must show prejudice from counsel's act or omission).

19. 21 O.S.2001, § 701.10a(4) ("all exhibits and a transcript of all testimony and other evidence properly admitted in the prior trial and sentencing shall be admissible in the new sentencing proceeding").

20. *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354, 1359, 158 L.Ed.2d 177 (2004); *Miller v. State*, 2004 OK CR 29, ¶ 24, 98 P.3d 738, 743.

21. *Littlejohn v. State*, 2004 OK CR 6, ¶ 27, 85 P.3d 287, 297. *Littlejohn* relied on *Ohio v. Roberts*, 448 U.S. 56, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). In *Roberts* the United States Supreme Court held the Confrontation Clause requires that before preliminary hearing testimony may be admitted in a subsequent proceeding the State must show the witness is unavailable and the testimony bears indicia of reliability. Subse-

quently in *Crawford*, 541 U.S. at 67–68, 124 S.Ct. at 1373–1374, the Court held that a judicial determination of reliability is not sufficient where testimonial evidence is concerned, and required a showing of unavailability and prior opportunity for cross-examination. This Court acknowledged the changed *Crawford* test in *Miller*, 2004 OK CR 29, ¶ 25, 98 P.3d at 743.

22. "In all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him". U.S. Const. amend. VI. *See Giles v. California*, — U.S. —, — n. 7, 128 S.Ct. 2678, 2692 n. 7, 171 L.Ed.2d 488 (2008) ("The asymmetrical nature of the Constitution's criminal-trial guarantees is not an anomaly, but the intentional conferring of privileges designed to prevent criminal conviction of the innocent. The State is at no risk of that."); *Crawford*, 541 U.S. at 48–51, 124 S.Ct. at 1362–63 (historical analysis of Confrontation Clause concludes it was designed to protect rights of accused). This Court's observation that the State too enjoys the right to cross-examine witnesses recognizes a practical and statutory reality, not a right to confrontation co-extensive with that of the accused. *Bennett v. State*, 1968 OK CR 219, ¶ 21, 448 P.2d 253, 264.

23. The State argues that prosecutors must be allowed to object anew to previous testimony which is offered in a subsequent capital resentencing. That is not the issue here. Either party may raise anew objections to the admissibility of evidence admitted in previous proceedings. While the State objected to the admissibility of Wraxall's testimony on residual doubt grounds, the trial court explicitly failed to rule on that objection, and prohibited the testimony on Confrontation Clause grounds.

been allowed to present it by transcript at this resentencing trial.

¶ 19 In Proposition IV Rojem argues that the trial court erred in allowing the State to read the Bill of Particulars to the jury, because it contains a detailed summary of the State's evidence. Criminal trial practice in Oklahoma requires that the Information be read to the jury and the defendant's plea announced before opening statements.[24] In capital resentencing cases, the Bill of Particulars takes the place of the Information. Before trial began, Rojem asked that, rather than reading the entire Bill of Particulars to the jury, the prosecutor read the statutory language defining the aggravating circumstances alleged in the Bill. Rojem sought to avoid having jurors hear the details of the crime before opening statements were made or evidence was presented. This request was denied. After opening instructions were given Rojem renewed his objection to the reading of the entire Bill of Particulars, which was again denied. The State then read the Bill of Particulars before making its opening statement.

¶ 20 Rojem does not allege that the Bill of Particulars was itself in any way defective or erroneous; nor does he claim that it failed to provide a summary of the evidence intended to support the alleged aggravating circumstance and the witnesses the State intended to call. He argues that this procedure gave the State four opportunities to put its case before the jury: reading them the document listing the evidence it intended to present, giving an opening statement describing the evidence, presenting the evidence, and presenting argument about the evidence. He suggests that this unnecessary repetition and the use of an official document, bearing the imprimatur of the State, violated his rights to due process and a fair trial. Essentially, Rojem claims that, while the Bill of Particu-

lars is extremely useful to give notice of the State's case to a defendant, it is unfairly prejudicial to share the information in the Bill with jurors. He cites no cases from any jurisdiction which support this claim.

¶ 21 Rojem has not shown that reading the Bill of Particulars is fundamentally unfair and violates fundamental conceptions of justice.[25] Nor has he shown that it violates the community's sense of fair play and decency,[26] or fails to adequately protect the rights of persons charged by the authorities with committing a crime.[27] Rojem's jurors were instructed that the Bill of Particulars was "the formal method of stating the grounds upon which the State seeks imposition of the death penalty," was not evidence, and jurors should not be influenced against Rojem by the fact that the State filed a Bill of Particulars.[28] The trial court further instructed that Rojem was presumed innocent of the allegations in the Bill of Particulars and that presumption would continue unless the State proved one of more of the aggravating circumstances alleged in the Bill beyond a reasonable doubt. After reading the Bill, the State announced that Rojem pled not guilty, placing the burden on the State to prove the allegations in the Bill beyond a reasonable doubt. Nothing in the record supports Rojem's suggestion that this procedure influenced jurors against him and resulted in an unfair trial. This Court has held that a trial court did not improperly direct a verdict by reading the allegations in the Bill of Particulars as part of an instruction on an aggravating circumstance.[29] Extending this principle, reading the allegations in the Bill of Particulars as part of opening instructions neither violates due process nor results in an unfair trial.

¶ 22 In Proposition VI Rojem claims that his death sentence violates the state and

---

24. 22 O.S.2001, § 831.

25. *Dowling v. United States,* 493 U.S. 342, 353, 110 S.Ct. 668, 674, 107 L.Ed.2d 708 (1990).

26. *Rochin v. California,* 342 U.S. 165, 173, 72 S.Ct. 205, 210, 96 L.Ed. 183 (1952).

27. *Chambers v. Florida,* 309 U.S. 227, 236, 60 S.Ct. 472, 476–77, 84 L.Ed. 716 (1940).

28. This instruction was modified from the uniform instruction explaining the nature of the Information. OUJI–CR (2nd) 1–8.

29. *Battenfield v. State,* 1991 OK CR 82, ¶¶ 24–25, 816 P.2d 555, 563.

federal constitutions because mitigating factors outweighed the aggravating circumstances. He asks this Court to independently weigh the evidence for the death penalty and set aside the verdict. This request suggests a misunderstanding of this Court's role. In its mandatory sentence review, this Court considers whether the death penalty was imposed under the influence of passion, prejudice or any other arbitrary factor.[30] We do not substitute our judgment for that of the jury, but review the record taking into account any circumstances which may have improperly affected the jury's verdict.[31] The record shows that attorneys for both parties conducted themselves professionally during this trial. Rojem raises neither a claim of prosecutorial misconduct nor a separate claim of ineffective assistance of counsel, and the record would not support either claim. He does not challenge the sufficiency of the evidence supporting the aggravating circumstances, and the record suggests that any such challenge would fail. No victim impact evidence was presented. We do not find that any evidence was improperly admitted or introduced which could have improperly influenced the jury.

¶ 23 Rojem claims that he was not allowed to present mitigating evidence, present in the record, which might have swayed jurors. The State initially argues that, under the law, nothing prevented Rojem from introducing any transcript evidence from the previous trials—even though in Proposition II the State argues that Wraxall's transcript testimony was inadmissible both because it, like the rest of this evidence, went to residual doubt, and because other conditions were not met. The State fails to coherently explain this apparent contradiction. Finally the State argues that, although Rojem could

have introduced the evidence, it would have been inadmissible because it went to residual doubt. This is correct. The evidence Rojem refers to as mitigating casts doubt on Rojem's involvement in the crimes. As we discuss in Proposition II, it would be inappropriate to admit evidence intended to create a residual doubt of Rojem's guilt during the resentencing trial.[32] This Court will not consider this category of evidence as we review the sentence.

¶ 24 After thoroughly reviewing the record, we find that the death penalty was not imposed under the influence of passion, prejudice or any other arbitrary factor. Sufficient evidence supported each of the three aggravating circumstances found by the jury. No improper evidence or argument was admitted which could have unfairly and prejudicially swayed the jury's decision. Jurors heard and had the opportunity to consider significant mitigating evidence in making their decision. In the absence of any error which might have influenced that decision, we will not disturb the jury's verdict.

### Issues Relating to Jury Instructions

¶ 25 Rojem argues in Proposition V that the jury instructions on the issue of mitigation impermissibly limited the definition of mitigating evidence and seriously diminished the effect of the mitigating evidence present in the case and, as a result, violated his constitutional rights. Rojem's jury was given the version of OUJI–CR (2nd) 4–78, defining mitigating evidence, in effect at the time of his trial. The trial court denied Rojem's request that this instruction be modified to reflect a different definition. Subsequently, in *Harris v. State*,[33] we considered a similar claim of error. We determined that the

---

30. 21 O.S.2001, § 701.13.

31. Rojem relies on *Ullery v. State*, 1999 OK CR 36, ¶ 46, 988 P.2d 332, 353. That case is unusual and differs factually from Rojem's case. In *Ullery*, jurors found a single aggravating circumstance—that the murder was especially heinous, atrocious or cruel. This Court found that improper opinion evidence regarding Ullery's sanity had been admitted, and that the prosecution had seriously misstated the law to Ullery's detriment in closing argument. These errors did not require relief separately. However, upon review-

ing the entire record as part of our mandatory sentence review we determined they may have improperly influenced the jury, and contributed to the Court's decision to modify Ullery's capital sentence to life without the possibility of parole.

32. I continue to disagree with this conclusion. I yield my vote on the basis of *stare decisis*.

33. 2007 OK CR 28, 164 P.3d 1103, *cert. denied*, —— U.S. ——, 128 S.Ct. 1717, 170 L.Ed.2d 524 (2008).

then-standard instruction (as given to Rojem's jury) did not prohibit jurors from considering mitigating evidence.[34] For this reason, the trial court did not err in refusing Rojem's request for a modified instruction.

¶ 26 Based on our review of several cases, we noted in *Harris* that the instruction's language defining mitigating evidence tended to encourage improper prosecutorial argument advising jurors to limit the evidence they could consider as mitigating. Such an argument was present in *Harris*, although we determined that it had no effect on the verdict.[35] In order to discourage improper argument on this important issue, we referred the issue to the Oklahoma Uniform Jury Instruction Committee (Criminal) to formulate a modified jury instruction defining mitigating circumstances in capital cases.[36] In doing so we stated: "we emphasize that the language of the current instruction itself is not legally inaccurate, inadequate, or unconstitutional. Cases in which the current OUJI–CR (2d) 4–78 has been used and applied are not subject to reversal on this basis."[37] Despite this clear statement, Rojem urges this Court to apply *Harris* retroactively and find error. We decline to do so. We note that, unlike *Harris*, the prosecutors in Rojem's case did not use the old language to improperly argue jurors should disregard mitigating evidence. That is, in Rojem's case there was no misstatement of law which might have confused jurors or misled them regarding their ability to consider Rojem's mitigating evidence. The trial court did not err in instructing the jury using the then-standard uniform instruction.

¶ 27 In Proposition VII Rojem claims that the uniform instructions on aggravating circumstances and mitigating evidence were inadequate, and violated his rights to due process and trial by jury, because jurors should be instructed that aggravating circumstances must outweigh mitigating evidence beyond a reasonable doubt. He admits this Court has rejected this claim.[38] We continue to hold that no such instruction is necessary, as Oklahoma law requires only that jurors unanimously find any aggravating circumstance beyond a reasonable doubt.

## Accumulation of Error

¶ 28 Rojem claims in Proposition VIII that the accumulation of error in this case deprived him of due process of law and a reliable sentencing proceeding. In Proposition I we found that the trial court abused its discretion in prohibiting Rojem's expert witness from using demonstrative aids during his testimony. However, as the expert was able to communicate his research, findings and conclusions to the jury, we determined the error did not require relief. In Proposition II we found that the trial court erred in refusing to allow Rojem to present a witness's testimony by transcript. However, the testimony was otherwise inadmissible. We found no other errors. There is no cumulative error in this case.[39]

## Mandatory Sentence Review

¶ 29 We must determine (1) whether the sentence of death was imposed under the influence of passion, prejudice, or any other arbitrary factor, and (2) whether the evidence supports the jury's findings of aggravating circumstances.[40] Upon review of the record, we cannot say the sentences of death were imposed because the jury was influ-

**34.** *Harris*, 2007 OK CR 28, ¶ 25, 164 P.3d at 1113.

**35.** *Harris*, 2007 OK CR 28, ¶ 25, 164 P.3d at 1113.

**36.** The modified language is found in current OUJI–CR (2nd) 4–78: "Mitigating circumstances are 1) circumstances that may extenuate or reduce the degree of moral culpability or blame, or 2) circumstances which in fairness, sympathy or mercy may lead you as jurors individually or collectively to decide against imposing the death penalty."

**37.** *Harris*, 2007 OK CR 28, ¶ 26, 164 P.3d at 1114.

**38.** *Harris v. State*, 2004 OK CR 1, ¶ 66, 84 P.3d 731, 754–55; *Torres v. State*, 2002 OK CR 35, ¶ 7, 58 P.3d 214, 216.

**39.** *Bell v. State*, 2007 OK CR 43, ¶ 14, 172 P.3d 622, 627 (no cumulative error where single error has been addressed).

**40.** 21 O.S.2001, § 701.13(C).

enced by passion, prejudice, or any other arbitrary factor.

¶ 30 The jury was instructed on and found the existence of three aggravating circumstances: (1) Rojem was previously convicted of a felony involving the use or threat of violence to the person; (2) the murder was especially heinous atrocious or cruel, and (3) the murder was committed for the purpose of avoiding or preventing a lawful arrest of prosecution. Rojem presented evidence that he had a troubled, chaotic, violent and abusive childhood; that he experienced physical injury and disabilities as a young child; that he lived in poverty and had poor parenting and role models; that he and his family had problems involving alcohol abuse; that he had difficulty in school; that he was nonetheless a loving and helpful family member; that his family loved and valued him; that he had made efforts to rehabilitate himself and help others since going to prison; and that he had a good record while incarcerated. The jury was specifically instructed on eight specific mitigating factors, and invited to consider other mitigating evidence they might find.[41] Upon our review of the record, we find that the sentence of death is factually substantiated and appropriate.

C. JOHNSON, P.J., A. JOHNSON, V.P.J., and LEWIS, J.: concur.

LUMPKIN, J.: concur in results.

LUMPKIN, Judge: concur in result.

¶ 1 I concur with the Court's decision to affirm the sentence in this case. However, I differ with the Court in some aspects of its analysis.

¶ 2 I continue in my belief that the issue of peremptory challenges is not a structural error issue and the Court erred in its analysis of the issue in *Golden v. State*, 2006 OK

CR 2, ¶ 18, 127 P.3d 1150, 1154–55 (Lumpkin, V.P.J., Dissenting, 127 P.3d at 1155–1158). Regardless, there was no error in this case.

¶ 3 In addressing the issue of the use of the power point as a demonstrative aid in the testimony of Dr. Cunningham, it must be emphasized that both parties agreed this was only a demonstrative aid to the testimony and would not be admitted as evidence. As a result, the jury was not denied the benefit of any admissible evidence because Dr. Cunningham was able to fully testify as to his opinion and the basis for it. If the power point had more information than was contained in the testimony of Dr. Cunningham, then that additional information was not evidence to be considered by the jury. While the visual aid would have assisted in the presentation of the defense evidence, I agree with the Court that any error was harmless. The decision by the jury that the continuing threat aggravator was not supported by the evidence confirms the harmless error. When Dr. Cunningham's testimony is viewed with the remaining mitigating witnesses' testimony, it is clear the jurors were presented with a clear picture of all relevant mitigating evidence.

---

41. Jurors were instructed: Rojem showed a potential for rehabilitation and for contributing affirmatively to the lives of his family, friends, and fellow inmates, and can make a contribution to society even in prison; while incarcerated, Rojem attempted to make it possible for death row inmates to become organ donors; Rojem has helped others by knitting afghans that are then sold to help finance projects aiding other people; as a result of his organ donation efforts Rojem

has touched the life of others in a positive way; Rojem has attempted to better himself by taking classes while in prison; the male DNA found under the fingernails of Layla Dawn Cummings is not that of Rojem; Rojem received a 1000 year sentence for his rape conviction and a 1000 year sentence for his kidnapping conviction in this case; Rojem has grown spiritually while in prison by becoming a lay disciple of the Buddhist religion.