FILED
United States Court of Appeals
Tenth Circuit

December 14, 2016

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

RICHARD ROJEM,

      Petitioner - Appellant,

v.

TERRY ROYAL, Warden, Oklahoma
State Penitentiary,

      Respondent - Appellee.

No. 14-6210
(D.C. No. 5:10-CV-00172-M)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **LUCERO**, and **GORSUCH**, Circuit Judges.

Petitioner-Appellant Richard Rojem appeals from the district court's denial

of his 28 U.S.C. § 2254 habeas corpus petition challenging his death sentence.

We granted a certificate of appealability (COA), have jurisdiction pursuant to 28

U.S.C. § 2253, and affirm.

Background

In 1985, Mr. Rojem was convicted of kidnapping, raping, and murdering a

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

seven-year-old girl. 6 Original Record (O.R.) 1037–41. He was sentenced to

1,000 years for each kidnapping and rape conviction, and to death for the murder

conviction. Id. The Oklahoma Court of Criminal Appeals (OCCA) affirmed his

convictions and sentences on direct appeal. Rojem v. State, 753 P.2d 359 (Okla.

Crim. App. 1988), cert. denied, 488 U.S. 900 (1988).

A series of appeals and resentencings followed. After being twice denied

state post-conviction relief in Rojem v. State, 829 P.2d 683 (Okla. Crim. App.

1992) and Rojem v. State, 925 P.2d 70 (Okla. Crim. App. 1996), he obtained

conditional federal habeas relief based on the trial court's failure to give a

weighing instruction during the penalty phase, Rojem v. Gibson, 245 F.3d 1130

(10th Cir. 2001). In the resentencing proceeding, the jury sentenced Mr. Rojem

to death. 13 O.R. 2451. The OCCA then reversed and remanded for a third

sentencing because of an improper denial of challenges for cause and exclusion of

a mitigating witness. Rojem v. State, 130 P.3d 287 (Okla. Crim. App. 2006). At

his third sentencing, the one at issue here, Mr. Rojem again received the death

penalty. 16 O.R. 3147–48. The OCCA affirmed, Rojem v. State, 207 P.3d 385

(Okla. Crim. App. 2009), and later denied his application for post-conviction

relief, Rojem v. State, No. PCD-2007-895 (Okla. Crim. App. June 23, 2009)

(unpublished); see Aplt. Br. Ex. C. The Supreme Court denied certiorari. Rojem

v. Oklahoma, 558 U.S. 1120 (2010). The federal district court then denied habeas

relief and a COA. Rojem v. Trammell, No. CIV-10-172-M, 2014 WL 4925512

(W.D. Okla. Sept. 30, 2014). In March 2015, we granted a COA on two issues:

> • **Ground 7.A.1:** Whether it was a violation of Mr. Rojem's Sixth and Fourteenth Amendment rights for his appellate counsel to fail to argue on appeal that Mr. Rojem's jury was coerced into returning a death sentence based on deadlocked jury instructions.
>
> • **Ground 8:** Whether the accumulation of error (1) as alleged in Ground 7.A.1, and (2) as found by the Oklahoma Court of Criminal Appeals with regard to . . . []Exclusion of Mitigating Evidence[] resulted in a violation of Mr. Rojem's constitutional rights.

Mar. 10, 2015 Case Mgmt. Order. A year later, we expanded the scope of the

COA to include an additional issue:

> Whether exclusion of mitigating evidence explaining Petitioner's conduct prevented Petitioner from presenting a complete defense under the Sixth Amendment and prevented the jury from considering mitigating evidence regarding Petitioner's childhood and character development when making the moral judgment that death was the appropriate punishment.

Mar. 9, 2016 Order.

Discussion

Mr. Rojem argues that (1) he received ineffective assistance of counsel based upon his appellate lawyer's failure to challenge the propriety of an Allen charge, and (2) this problem combined with the exclusion of mitigating evidence resulted in cumulative error.

- 3 -

A.    Ineffective Assistance of Appellate Counsel[1]

After deliberating for a little over an hour during Mr. Rojem's third sentencing, the jury sent a note to the court stating it was deadlocked in a vote of ten to two in favor of the death penalty.  16 O.R. 3143.  Defense counsel proposed an instruction that read:

> [I]n the event you are unable to reach a unanimous verdict as to punishment after deliberating for a reasonable time, the Court will assess a penalty of life imprisonment without the possibility of parole, or life imprisonment with the possibility of parole.

> Your inability to arrive at a unanimous decision on punishment will not mean that the Defendant will not reach [sic] any punishment for murder in the first degree.  It only means that he will receive either a sentence of life imprisonment without the possibility of parole, or life imprisonment with the possibility of parole.

> The Defendant will be punished for the murder following this procedure, whether you are able to arrive at a unanimous verdict, or not.

4 Trial Record (Tr. R.) 1140–41.  The court rejected this instruction, noting only seventy minutes had elapsed, and replied to the jury, "Please continue with your deliberations."  4 Tr. R. 1140–41.  Another hour passed and the jury sent a second note indicating that it was still deadlocked, this time, eleven to one in favor of a death sentence.  16 O.R. 3144.  The hold-out juror, the note indicated, refused to sentence Mr. Rojem to death for religious reasons.  Id.  In response, the court sent the jury the instruction on deadlock from the Oklahoma pattern jury instructions:

---

[1]  Although Mr. Rojem now claims ineffective assistance for his trial and appellate lawyers, Aplt. Br. at 19, the COA limits our review to only his appellate counsel.

> If on further deliberation you are unable to agree unanimously as to punishment, I shall discharge you and impose a sentence of imprisonment for life without the possibility of parole or imprisonment for life with the possibility of parole.

16 O.R. 3145; see Vernon's Okla. Forms 2d, OUJI-CR 4-83. The judge added, "Please continue with your deliberations." 16 O.R. 3146.

Immediately after the jurors received this instruction, they took a break for an unknown amount of time. See 4 Tr. R. 1144. About an hour after the instruction was given, the jury returned with a unanimous verdict for a death sentence. 16 O.R. 3147–48.

The parties dispute how much deference we should give to the OCCA in determining whether Mr. Rojem's appellate counsel was ineffective for failing to challenge this supplemental instruction. We defer to a state court's legal conclusions if it reaches the merits of the argument before us. 28 U.S.C. § 2254(d); see Cargle v. Mullin, 317 F.3d 1196, 1212 (10th Cir. 2003). The OCCA did not examine the merits of this issue. Instead, the OCCA addressed Mr. Rojem's claim of appellate ineffectiveness for failing to argue that trial counsel was ineffective. Aplt. Br. Ex. C, at *7–8. We therefore owe no deference on this issue.

To succeed on his ineffective assistance claim, Mr. Rojem must show (1) his appellate counsel's actions were constitutionally deficient because they were objectively unreasonable and (2) there was resulting prejudice. Strickland v.

Washington, 466 U.S. 668, 687 (1984). In deciding whether counsel's performance was deficient, we "look to the merits of the omitted issue." Cargle, 317 F.3d at 1202 (quoting Neill v. Gibson, 278 F.3d 1044, 1057 (10th Cir. 2001)). Underlying claims that are plainly meritorious establish deficient performance; claims that have some merit may establish deficient performance; and meritless claims do not. Id. If he can show deficient performance, Mr. Rojem must then prove prejudice.

To evaluate the merit of Mr. Rojem's claim, we must determine whether the Allen charge was coercive. An Allen charge is "a supplemental instruction given to the jury and designed to encourage a divided jury to agree on a verdict." United States v. Zabriskie, 415 F.3d 1139, 1147 (10th Cir. 2005) (emphasis omitted). Allen instructions must not be coercive. Gilbert v. Mullin, 302 F.3d 1166, 1173 (10th Cir. 2002). To determine if an Allen charge is coercive, we look at the instruction "in its context and under all the circumstances." Lowenfield v. Phelps, 484 U.S. 231, 237 (1988) (quoting Jenkins v. United States, 380 U.S. 445, 446 (1965)). We consider the language of the Allen charge, whether it was given with other instructions, when the instruction was administered, and the length of subsequent jury deliberation. United States v. Arney, 248 F.3d 984, 988 (10th Cir. 2001).

Mr. Rojem first challenges the language of the charge. He argues Lowenfield requires the inclusion of cautionary language reminding jurors not to

surrender their conscientiously held convictions. Aplt. Br. at 29–30. We disagree. While the Allen charge in Lowenfield included an admonition not to surrender one's honestly held beliefs, the Court did not hold that such language is always required. The Court's holding was expressly limited to the Allen instruction in that case, see Lowenfield, 484 U.S. at 241, which was materially different from the one before us because it asked jurors to reexamine their views. Id. at 235. Indeed, we have upheld Allen charges that contain almost identical language. See, e.g., Darks v.Mullin, 327 F.3d 1001, 1013–14 (10th Cir. 2013); United States v. LaVallee, 439 F.3d 670, 689–90 (10th Cir. 2006); United States v. Winn, 411 F.2d 415, 416–17 (10th Cir. 1969). We explained in Darks that "[a]lthough [the Allen instruction] lacked protective language assuring minority jurors they were not required to relinquish firmly held convictions, it did not include any language asking the jurors to reconsider their positions and to change their positions if they believed they were wrong." Darks, 327 F.3d at 1014.

Mr. Rojem also argues that identifying alternative verdicts, in this case, life in prison with or without parole, coerced the hold-out juror to select the death penalty. Aplt. Reply Br. at 21–22. This, Mr. Rojem claims, is because she was opposed to sentencing Mr. Rojem to death for religious reasons, but also thought he was too dangerous to allow him parole. Id. at 22. The sentence the hold-out juror found most appropriate, Mr. Rojem explains, was life in prison without the possibility of parole. Id. Mr. Rojem asserts that forcing her to choose between

- 7 -

fates that were both problematic to her amounts to coercion.  Id.  We disagree.  In making this argument, Mr. Rojem assumes what the hold-out juror's mindset was during deliberations without citing to the record.  The jury knew Mr. Rojem would spend the rest of his life in jail if they did not sentence him to death due to his two 1,000 year sentences for rape and kidnapping.  See 3 Tr. R. 754–56.

Mr. Rojem next takes issue with the placement and timing of the Allen charge.  The fact that it was not incorporated with the initial jury instructions increases "the possibility of coercion," but "does not by itself establish coercion." United States v. McElhiney, 275 F.3d 928, 942 (10th Cir. 2001) (citing United States v. McKinney, 822 F.2d 946, 951 (10th Cir. 1987)).  Including Allen charges with the rest of the jury instructions is not required, but preferred. McKinney, 822 F.2d at 951.  This is also the case with giving an Allen charge to the jury after deliberations begin — it does not necessarily suggest coercion.  Id.

Mr. Rojem lastly contends that the length of the deliberation that occurred after the jury received the instruction "suggests the possibility of coercion." Lowenfield, 484 U.S. at 240.  In this case, the jury returned with a verdict one hour after receiving the Allen charge.  The amount of time the jurors spent on a break after they received the Allen charge, but before continuing their deliberations, is unknown.  We have approved Allen instructions in previous cases where juries deliberated for periods of time similar to how long the jury deliberated in this case after receiving the instruction.  See, e.g., Arney, 248 F.3d

at 990 (one hour); <u>McKinney</u>, 822 F.2d 946, 950 (10th Cir. 1987) (verdict on twenty-nine counts returned one hour and twenty minutes after receiving an <u>Allen</u> instruction); <u>Munroe v. United States</u>, 424 F.2d 243, 246 (10th Cir. 1970) (forty minutes).

In sum, while the placement and timing of the charge in this case might suggest the potential for coercion, the wording of the charge as well as the length of subsequent deliberations do not. Improper placement and timing of an <u>Allen</u> charge does not amount to coercion without coercive language or some other indicia of coercion. <u>See</u> <u>McElhiney</u>, 275 F.3d at 942. Because the issue omitted on direct appeal is not meritorious, Mr. Rojem cannot demonstrate deficient performance. There is therefore no need to discuss prejudice. <u>See</u> <u>Strickland</u>, 466 U.S. at 687.

B.     <u>Exclusion of Mitigating Evidence</u>

Mr. Rojem argues that the exclusion of mitigating evidence, an error, <u>Rojem</u>, 207 P.3d 389–92, had a "substantial and injurious effect" on the jury's verdict, <u>Fry v. Pliler</u>, 551 U.S. 112, 121 (2007). <u>See generally</u> <u>Brecht v. Abrahamson</u>, 507 U.S. 619 (1993). We review the OCCA's decision that it did not de novo. <u>See</u> <u>Fry</u>, 551 U.S. at 121–22; <u>Herrera v. Lemaster</u>, 301 F.3d 1192, 1197 (10th Cir. 2002) (en banc).

The Oklahoma trial judge excluded a PowerPoint presentation prepared by Mr. Rojem's primary expert witness because it referred to a study conducted by

the Department of Justice. 4 Tr. R. 941–45. The PowerPoint was a demonstrative aid designed to more clearly present to the jury aspects of Mr. Rojem's life that may have influenced his decision to engage in culpable behavior. 4 Tr. R. 919.

Mr. Rojem first argues that excluding the slides had a substantial and injurious effect because the jury never learned he was sexually abused by his stepbrother when he was a child. See Aplt. Supp. Br. at 8–10. Although this evidence is relevant to sentencing, see Wiggins v. Smith, 539 U.S. 510, 534–35 (2003), the court's exclusion of the PowerPoint was merely an exclusion of form, not substance. The judge stated that he "would be glad to hear [the expert's] testimony," only without reference to the study or PowerPoint. 4 Tr. R. 942–43. Indeed, the expert, without objection, stated, "There were other things that happened to [Mr. Rojem] sexually growing up . . . [that] distort[ed] his sexuality." 4 Tr. R. 965–66. Defense counsel could have elicited additional evidence or testimony from the expert, but chose not to.

Mr. Rojem also argues that his expert's inability to explain the basis for his conclusions by citing the Department of Justice's study affected the jury's verdict. Aplt. Supp. Br. at 6–10. The federal district court dismissed this argument because it found the jury "repeatedly" heard that the expert's opinion was based on a nationally known and accepted study. Rojem, 2014 WL 4925512, at *8. On appeal, Mr. Rojem points out that the jury only heard once that his entire conclusion was based on widely accepted research. 4 Tr. R. 948. Learning

more about the basis for the expert's findings could have increased his credibility in the jury's eyes, but the government did not attack the basis for the expert's findings during cross-examination. <u>See</u> 4 T. R. 1002–44. Defense counsel pointed this out during redirect. 4 Tr. R. 1049. Furthermore, the expert's curriculum vitae was admitted into evidence, 4 Tr. R. 910–11, and discussed at length during his testimony, 4 Tr. R. 899–910.

We find no cumulative error because the <u>Allen</u> charge was proper and the excluded evidence did not have a substantial and injurious effect on the jury's verdict. <u>See</u> <u>Moore v. Reynolds</u>, 153 F.3d 1086, 1113 (10th Cir. 1998).

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge